# NELSON *v.* CAMPBELL, COMMISSIONER, ALABAMA DEPARTMENT OF CORRECTIONS, ET AL.

No. 03–6821.   Argued March 29, 2004—Decided May 24, 2004

*Bryan A. Stevenson* argued the cause for petitioner. With him on the briefs were *Michael Kennedy McIntyre,* by appointment of the Court, 540 U. S. 1102, *H. Victoria Smith,* and *LaJuana Davis.*

*Kevin C. Newsom,* Solicitor General of Alabama, argued the cause for respondents. With him on the brief were *Richard F. Allen,* Acting Attorney General, and *Michael B. Billingsley,* Deputy Solicitor General.*

JUSTICE O'CONNOR delivered the opinion of the Court.

Three days before his scheduled execution by lethal injection, petitioner David Nelson filed a civil rights action in District Court, pursuant to Rev. Stat. § 1979, 42 U. S. C. § 1983, alleging that the use of a "cut-down" procedure to access his veins would violate the Eighth Amendment. Petitioner, who had already filed one unsuccessful federal habeas application, sought a stay of execution so that the District Court could consider the merits of his constitutional claim. The question before us is whether § 1983 is an appropriate vehicle for petitioner's Eighth Amendment claim seeking a temporary stay and permanent injunctive relief. We answer that question in the affirmative, reverse the contrary judgment

---

*Briefs of *amici curiae* urging affirmance were filed for the State of Ohio et al. by *Jim Petro,* Attorney General of Ohio, *Douglas R. Cole,* State Solicitor, *Christopher D. Stock,* Deputy Solicitor, *Charles L. Wille,* Assistant Attorney General, by *Christopher L. Morano,* Chief State's Attorney of Connecticut, and by the Attorneys General for their respective States as follows: *Terry Goddard* of Arizona, *Bill Lockyer* of California, *Ken Salazar* of Colorado, *M. Jane Brady* of Delaware, *Charlie Crist* of Florida, *Thurbert E. Baker* of Georgia, *Lawrence G. Wasden* of Idaho, *Lisa Madigan* of Illinois, *Steve Carter* of Indiana, *Phill Kline* of Kansas, *Gregory D. Stumbo* of Kentucky, *Charles C. Foti, Jr.,* of Louisiana, *Jim Hood* of Mississippi, *Jeremiah W. (Jay) Nixon* of Missouri, *Mike McGrath* of Montana, *Jon Bruning* of Nebraska, *Brian Sandoval* of Nevada, *Patricia A. Madrid* of New Mexico, *Roy Cooper* of North Carolina, *W. A. Drew Edmondson* of Oklahoma, *Gerald J. Pappert* of Pennsylvania, *Henry Dargan McMaster* of South Carolina, *Lawrence E. Long* of South Dakota, *Paul G. Summers* of Tennessee, *Greg Abbott* of Texas, *Mark L. Shurtleff* of Utah, *Jerry W. Kilgore* of Virginia, and *Patrick J. Crank* of Wyoming; for the Criminal Justice Legal Foundation by *Kent S. Scheidegger;* and for Senator Orrin G. Hatch et al. by *Ed R. Haden.*

*George H. Kendall* filed a brief for Laurie Dill, M. D., et al. as *amici curiae.*

of the Eleventh Circuit, and remand the case for further proceedings consistent with this opinion.

## I

Because the District Court dismissed the suit at the pleading stage, we assume the allegations in petitioner's complaint to be true. Petitioner was found guilty by a jury in 1979 of capital murder and sentenced to death. Following two resentencings, the Eleventh Circuit, on June 3, 2002, affirmed the District Court's denial of petitioner's first federal habeas petition challenging the most recent death sentence. *Nelson* v. *Alabama*, 292 F. 3d 1291. Up until and at the time of that disposition, Alabama employed electrocution as its sole method of execution. On July 1, 2002, Alabama changed to lethal injection, though it still allowed inmates to opt for electrocution upon written notification within 30 days of the Alabama Supreme Court's entry of judgment or July 1, 2002, whichever is later. Ala. Code § 15–18–82.1 (Lexis Supp. 2003). Because he failed to make a timely request, petitioner waived his option to be executed by electrocution.

This Court denied petitioner's request for certiorari review of the Eleventh Circuit's decision on March 24, 2003. *Nelson* v. *Alabama*, 538 U. S. 926. Two weeks later, the Alabama Attorney General's office moved the Alabama Supreme Court to set an execution date. App. 81. Petitioner responded by letter that he "ha[d] no plans to contest [the] motion," agreeing "that an execution date should be set promptly by the court in the immediate future." *Id.*, at 89. Hearing no objection, the Alabama Supreme Court, on September 3, 2003, set petitioner's execution for October 9, 2003.

Due to years of drug abuse, petitioner has severely compromised peripheral veins, which are inaccessible by standard techniques for gaining intravenous access, such as a needle. *Id.*, at 7. In August 2003, counsel for petitioner contacted Grantt Culliver, warden of Holman Correctional Facility where the execution was to take place, to discuss

how petitioner's medical condition might impact the lethal injection procedure. Counsel specifically requested a copy of the State's written protocol for gaining venous access prior to execution, and asked that a privately retained or prison physician consult with petitioner about the procedure. *Id.*, at 8–9, 25–26. The warden advised counsel that the State had such a protocol, but stated that he could not provide it to her. He nevertheless assured counsel that "medical personnel" would be present during the execution and that a prison physician would evaluate and speak with petitioner upon his arrival at Holman Correctional Facility. *Id.*, at 8, 26.

Petitioner was transferred to Holman shortly after the Alabama Supreme Court set the execution date. Warden Culliver and a prison nurse met with and examined petitioner on September 10, 2003. *Id.*, at 9–10. Upon confirming that petitioner had compromised veins, Warden Culliver informed petitioner that prison personnel would cut a 0.5-inch incision in petitioner's arm and catheterize a vein 24 hours before the scheduled execution. *Id.*, at 11. At a second meeting on Friday, October 3, 2003, the warden dramatically altered the prognosis: prison personnel would now make a 2-inch incision in petitioner's arm or leg; the procedure would take place one hour before the scheduled execution; and only local anesthesia would be used. *Id.*, at 12. There was no assurance that a physician would perform or even be present for the procedure. Counsel immediately contacted the Alabama Department of Corrections Legal Department requesting a copy of the State's execution protocol. *Id.*, at 13, 27. The legal department denied counsel's request. *Id.*, at 28.

The following Monday, three days before his scheduled execution, petitioner filed the present § 1983 action alleging that the so-called "cut-down" procedure constituted cruel and unusual punishment and deliberate indifference to his serious medical needs in violation of the Eighth Amendment. *Id.*, at 21 (complaint), 102 (amended complaint). Petitioner

sought: a permanent injunction against use of the cut-down; a temporary stay of execution to allow the District Court to consider the merits of his claim; an order requiring respondents to furnish a copy of the protocol setting forth the medical procedures to be used to gain venous access; and an order directing respondents, in consultation with medical experts, to promulgate a venous access protocol that comports with contemporary standards of medical care. *Id.*, at 22. Appended to the complaint was an affidavit from Dr. Mark Heath, a board certified anesthesiologist and assistant professor at Columbia University College of Physicians and Surgeons, attesting that the cut-down is a dangerous and antiquated medical procedure to be performed only by a trained physician in a clinical environment with the patient under deep sedation. In light of safer and less-invasive contemporary means of venous access, Dr. Heath concluded that "there is no comprehensible reason for the State of Alabama to be planning to employ the cut-down procedure to obtain intravenous access, unless there exists an intent to render the procedure more painful and risky than it otherwise needs to be." *Id.*, at 37.

Respondents moved to dismiss the complaint for want of jurisdiction on the grounds that petitioner's § 1983 claim and accompanying stay request were the "'functional equivalent'" of a second or successive habeas application subject to the gatekeeping provisions of 28 U. S. C. § 2244(b). App. 82. The District Court agreed and, because petitioner had not obtained authorization to file a second or successive application as required by § 2244(b)(3), dismissed the complaint. A divided panel of the Eleventh Circuit affirmed. Relying on *Fugate* v. *Department of Corrections*, 301 F. 3d 1287 (2002), in which the Eleventh Circuit had held that § 1983 claims challenging the method of execution necessarily sound in habeas, the majority held that petitioner should have sought authorization to file a second or successive habeas application. 347 F. 3d 910, 912 (2003). The majority also con-

cluded that, even were it to construe petitioner's appeal as a request for such authorization, it would nevertheless deny the request because petitioner could not show that, but for the purported Eighth Amendment violation, "'no reasonable factfinder would have found [him] guilty of the underlying offense.'" *Ibid.* (quoting 28 U. S. C. §2244(b)(2)(B)(ii)). Thus, the Eleventh Circuit held that petitioner was without recourse to challenge the constitutionality of the cut-down procedure in Federal District Court. We granted certiorari, 540 U. S. 1046 (2003), and now reverse.

## II

### A

Section 1983 authorizes a "suit in equity, or other proper proceeding for redress," against any person who, under color of state law, "subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution." Petitioner's complaint states such a claim. Despite its literal applicability, however, § 1983 must yield to the more specific federal habeas statute, with its attendant procedural and exhaustion requirements, where an inmate seeks injunctive relief challenging the fact of his conviction or the duration of his sentence. See *Preiser* v. *Rodriguez,* 411 U. S. 475, 489 (1973). Such claims fall within the "core" of habeas corpus and are thus not cognizable when brought pursuant to § 1983. *Ibid.* By contrast, constitutional claims that merely challenge the conditions of a prisoner's confinement, whether the inmate seeks monetary or injunctive relief, fall outside of that core and may be brought pursuant to § 1983 in the first instance. See *Muhammad* v. *Close,* 540 U. S. 749, 750 (2004) *(per curiam); Preiser, supra,* at 498–499.

We have not yet had occasion to consider whether civil rights suits seeking to enjoin the use of a particular method of execution—*e. g.,* lethal injection or electrocution—fall within the core of federal habeas corpus or, rather, whether

they are properly viewed as challenges to the conditions of a condemned inmate's death sentence. Neither the "conditions" nor the "fact or duration" label is particularly apt. A suit seeking to enjoin a particular means of effectuating a sentence of death does not directly call into question the "fact" or "validity" of the sentence itself—by simply altering its method of execution, the State can go forward with the sentence. Cf. *Weaver* v. *Graham*, 450 U. S. 24, 32–33, n. 17 (1981) (no *ex post facto* violation to change method of execution to more humane method). On the other hand, imposition of the death penalty presupposes a means of carrying it out. In a State such as Alabama, where the legislature has established lethal injection as the preferred method of execution, see Ala. Code § 15–18–82 (Lexis Supp. 2003) (lethal injection as default method), a constitutional challenge seeking to permanently enjoin the use of lethal injection may amount to a challenge to the fact of the sentence itself. A finding of unconstitutionality would require statutory amendment or variance, imposing significant costs on the State and the administration of its penal system. And while it makes little sense to talk of the "duration" of a death sentence, a State retains a significant interest in meting out a sentence of death in a timely fashion. See *Calderon* v. *Thompson*, 523 U. S. 538, 556–557 (1998); *In re Blodgett*, 502 U. S. 236, 238 (1992) *(per curiam); McCleskey* v. *Zant*, 499 U. S. 467, 491 (1991) ("[T]he power of a State to pass laws means little if the State cannot enforce them").

We need not reach here the difficult question of how to categorize method-of-execution claims generally. Respondents at oral argument conceded that § 1983 would be an appropriate vehicle for an inmate who is not facing execution to bring a "deliberate indifference" challenge to the constitutionality of the cut-down procedure if used to gain venous access for purposes of providing medical treatment. Tr. of Oral Arg. 40 ("I don't disagree . . . that a cut-down occurring for purposes of venous access, wholly divorced from an exe-

cution, is indeed a valid conditions of confinement claim");
see also *Estelle* v. *Gamble,* 429 U. S. 97, 104 (1976) ("We
therefore conclude that deliberate indifference to serious
medical needs of prisoners constitutes the 'unnecessary and
wanton infliction of pain' proscribed by the Eighth Amend-
ment" (citation omitted)). We see no reason on the face of
the complaint to treat petitioner's claim differently solely be-
cause he has been condemned to die.

Respondents counter that, because the cut-down is part of
the execution procedure, petitioner's challenge is, in fact, a
challenge to the fact of his execution. They offer the follow-
ing argument: A challenge to the use of lethal injection as a
method of execution sounds in habeas; venous access is a
necessary prerequisite to, and thus an indispensable part of,
any lethal injection procedure; therefore, a challenge to the
State's means of achieving venous access must be brought in
a federal habeas application. Even were we to accept as
given respondents' premise that a challenge to lethal injec-
tion sounds in habeas, the conclusion does not follow. That
venous access is a necessary prerequisite does not imply that
a particular means of gaining such access is likewise neces-
sary. Indeed, the gravamen of petitioner's entire claim is
that use of the cut-down would be *gratuitous*. Merely label-
ing something as part of an execution procedure is insuffi-
cient to insulate it from a § 1983 attack.

If as a legal matter the cut-down were a statutorily man-
dated part of the lethal injection protocol, or if as a factual
matter petitioner were unable or unwilling to concede ac-
ceptable alternatives for gaining venous access, respondents
might have a stronger argument that success on the mer-
its, coupled with injunctive relief, would call into question
the death sentence itself. But petitioner has been careful
throughout these proceedings, in his complaint and at oral
argument, to assert that the cut-down, as well as the war-
den's refusal to provide reliable information regarding the
cut-down protocol, are *wholly unnecessary* to gaining venous

access. Petitioner has alleged alternatives that, if they had been used, would have allowed the State to proceed with the execution as scheduled. App. 17 (complaint) (proffering as "less invasive, less painful, faster, cheaper, and safer" the alternative procedure of "percutaneous central line placement"); *id.*, at 37–38 (affidavit of Dr. Mark Heath) (describing relative merits of the cut-down and percutaneous central line placement). No Alabama statute requires use of the cut-down, see Ala. Code § 15–18–82 (Lexis Supp. 2003) (saying only that method of execution is lethal injection), and respondents have offered no duly-promulgated regulations to the contrary.

If on remand and after an evidentiary hearing the District Court concludes that use of the cut-down procedure as described in the complaint is necessary for administering the lethal injection, the District Court will need to address the broader question, left open here, of how to treat method-of-execution claims generally. An evidentiary hearing will in all likelihood be unnecessary, however, as the State now seems willing to implement petitioner's proposed alternatives. See Tr. of Oral Arg. 45–46 ("I think there is no disagreement here that percutaneous central line placement is the preferred method and will, in fact, be used, a cut-down to be used only if actually necessary").

We note that our holding here is consistent with our approach to civil rights damages actions, which, like method-of-execution challenges, fall at the margins of habeas. Although damages are not an available habeas remedy, we have previously concluded that a § 1983 suit for damages that would "necessarily imply" the invalidity of the fact of an inmate's conviction, or "necessarily imply" the invalidity of the length of an inmate's sentence, is not cognizable under § 1983 unless and until the inmate obtains favorable termination of a state, or federal habeas, challenge to his conviction or sentence. *Heck* v. *Humphrey,* 512 U. S. 477, 487 (1994); *Edwards* v. *Balisok,* 520 U. S. 641, 648 (1997). This "favorable

termination" requirement is necessary to prevent inmates from doing indirectly through damages actions what they could not do directly by seeking injunctive relief—challenge the fact or duration of their confinement without complying with the procedural limitations of the federal habeas statute. *Muhammad*, 540 U. S., at 751. Even so, we were careful in *Heck* to stress the importance of the term "necessarily." For instance, we acknowledged that an inmate could bring a challenge to the lawfulness of a search pursuant to § 1983 in the first instance, even if the search revealed evidence used to convict the inmate at trial, because success on the merits would not *"necessarily* imply that the plaintiff's conviction was unlawful." 512 U. S., at 487, n. 7 (noting doctrines such as inevitable discovery, independent source, and harmless error). To hold otherwise would have cut off potentially valid damages actions as to which a plaintiff might never obtain favorable termination—suits that could otherwise have gone forward had the plaintiff not been convicted. In the present context, focusing attention on whether petitioner's challenge to the cut-down procedure would *necessarily* prevent Alabama from carrying out its execution both protects against the use of § 1983 to circumvent any limits imposed by the habeas statute and minimizes the extent to which the fact of a prisoner's imminent execution will require differential treatment of his otherwise cognizable § 1983 claims.

## B

There remains the question whether petitioner's request for a temporary stay of execution, subsequently recharacterized by petitioner as a request for a preliminary injunction, App. 49, transformed his conditions of confinement claim into a challenge to the validity of his death sentence. Normally, it would not. If a request for a permanent injunction does not sound in habeas, it follows that the lesser included request for a temporary stay (or preliminary injunction) does not either.

There is a complication in the present case, however. In his prayer for relief, petitioner asked the District Court, among other things, to "[e]nter an order granting injunctive relief and staying [petitioner's] execution, which is currently scheduled for October 9, 2003." *Id.*, at 22. Though he did not specify what permanent injunctive relief he was seeking, a fair reading of the complaint leaves no doubt that petitioner was asking only to enjoin the State's use of the cut-down, not his execution by lethal injection. The same cannot be said of petitioner's stay request. There, he explicitly requested that the District Court stay his execution, seemingly without regard to whether the State did or did not resort to the cut-down. This observation is potentially significant given the fact that the State has maintained, from the outset of this litigation, that it would attempt other methods of venous access prior to engaging in the cut-down. See *id.*, at 51–52; *id.*, at 93–94 (affidavit of Warden Culliver). By asking for broader relief than necessary, petitioner undermines his assertions that: (1) his § 1983 suit is not a tactic for delay, and (2) he is not challenging the fact of his execution, but merely a dispensable preliminary procedure.

Whatever problem this failing might have caused before this Court entered a stay, the execution warrant has now expired. If the State reschedules the execution while this case is pending on remand and petitioner seeks another similarly broad stay, the District Court will need to address the question whether a request to enjoin the execution, rather than merely to enjoin an allegedly unnecessary precursor medical procedure, properly sounds in habeas. See also 18 U. S. C. § 3626(a)(2) ("Preliminary injunctive relief [in prison conditions cases] must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm").

## C

Respondents argue that a decision to reverse the judgment of the Eleventh Circuit would open the floodgates to all manner of method-of-execution challenges, as well as last minute stay requests. But, because we do not here resolve the question of how to treat method-of-execution claims generally, our holding is extremely limited.

Moreover, as our previous decision in *Gomez* v. *United States Dist. Court for Northern Dist. of Cal.*, 503 U. S. 653 (1992) *(per curiam)*, makes clear, the mere fact that an inmate states a cognizable § 1983 claim does not warrant the entry of a stay as a matter of right. *Gomez* came to us on a motion by the State to vacate a stay entered by an en banc panel of the Court of Appeals for the Ninth Circuit that would have allowed the District Court time to consider the merits of a condemned ·inmate's last-minute § 1983 action challenging the constitutionality of California's use of the gas chamber. We left open the question whether the inmate's claim was cognizable under § 1983, but vacated the stay nonetheless. The inmate, Robert Alton Harris, who had already filed four unsuccessful federal habeas applications, waited until the eleventh hour to file his challenge despite the fact that California's method of execution had been in place for years: "This claim could have been brought more than a decade ago. There is no good reason for this abusive delay, which has been compounded by last-minute attempts to manipulate the judicial process. A court may consider the last-minute nature of an application to stay execution in deciding whether to grant equitable relief." *Id.*, at 654.

A stay is an equitable remedy, and "[e]quity must take into consideration the State's strong interest in proceeding with its judgment and . . . attempt[s] at manipulation." *Ibid.* Thus, before granting a stay, a district court must consider not only the likelihood of success on the merits and the relative harms to the parties, but also the extent to which the

inmate has delayed unnecessarily in bringing the claim. Given the State's significant interest in enforcing its criminal judgments, see *Blodgett*, 502 U. S., at 239; *McCleskey*, 499 U. S., at 491, there is a strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay.

Finally, the ability to bring a § 1983 claim, rather than a habeas application, does not entirely free inmates from substantive or procedural limitations. The Prison Litigation Reform Act of 1995 (Act) imposes limits on the scope and duration of preliminary and permanent injunctive relief, including a requirement that, before issuing such relief, "[a] court shall give substantial weight to any adverse impact on . . . the operation of a criminal justice system caused by the relief." 18 U. S. C. § 3626(a)(1); accord, § 3626(a)(2). It requires that inmates exhaust available state administrative remedies before bringing a § 1983 action challenging the conditions of their confinement. 110 Stat. 1321–71, 42 U. S. C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted"). The Act mandates that a district court "shall," on its own motion, dismiss "any action brought with respect to prison conditions under section 1983 of this title . . . if the court is satisfied that the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief." § 1997e(c)(1). Indeed, if the claim is frivolous on its face, a district court may dismiss the suit before the plaintiff has exhausted his state remedies. § 1997e(c)(2).

For the reasons stated herein, the judgment of the Court of Appeals for the Eleventh Circuit is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*