WILSON, Circuit Judge,
dissenting:
I would affirm the entry of the stay based on the rationale articulated by Judge Gilman in his dissent in Cooey v. Strickland, 479 F.3d 412 (6th Cir.2007). In my view, a method-of-execution challenge brought under § 1983 does not accrue until the prisoner knows or has reason to know the facts giving rise to his claim and the prisoner’s execution becomes imminent. See id. at 426 (Gilman, J., dissenting). For accrual purposes, the execution becomes imminent when the prisoner has exhausted all of his state and federal challenges to the validity of the sentence. See id. I find this approach preferable to that adopted by the majority, which effectively requires a death-sentenced prisoner to file a method-of-execution claim years before his execution is to take place, during which time the challenged protocol could be materially changed. Accordingly, I respectfully dissent.
As the majority correctly notes, it is well established that a federal claim accrues when the prospective plaintiff “knows or has reason to know of the injury which is the basis of the action.” Corn v. City of Lauderdale Lakes, 904 F.2d 585, 588 (11th Cir.1990). The majority holds that the facts supporting Callahan’s § 1983 action were or should have been apparent to him on July 31, 2002, when the 30-day period within which he could choose electrocution as his means of execution expired. I believe that this conclusion misconstrues the nature of the injury that Callahan seeks to enjoin. Callahan’s § 1983 action is not based on the fact of his death sentence or even on the fact that he is to be executed by lethal injection. Rather, Callahan is asserting that the specific lethal injection protocol presently employed by Alabama is likely to cause him undue pain and suffering when his execution is carried out. This claim could have begun to accrue only (1) when Callahan knew or had reason to know the details of Alabama’s lethal injection protocol and (2) when his execution became imminent.
Contrary to the majority’s conclusion, neither of these circumstances existed in July of 2002. Although Alabama adopted lethal injection as its sole method of execution at that time, its specific protocol is neither fixed by law nor readily accessible. The protocol is a creature of regulation, not statute, and thus it is subject to change at any time by the Alabama Department of Corrections. As is the case in other states, “[n]o statutory framework determines when or how such changes may occur. Nor is there a framework governing when, or even if, such changes will be publicized.” Cooey v. Strickland, 479 F.3d 412, 427 (6th Cir.2007) (Gilman, J., dissenting). Indeed, it appears that Alabama has revised the protocol on a number of previous occasions, and there is reason to believe that its efforts to promulgate these changes have been inadequate. See Jones v. Allen, 483 F.Supp.2d 1142, 1146 n. 2 (M.D.Ala.2007) (noting that Alabama defendants “admitted that earlier revisions to the protocol were made ... but that after diligent search they [were] unable to locate *1179 the version of the protocol that existed before such changes were made”). Adding to this uncertainty, the State of Alabama keeps the specifics of its lethal injection protocol a secret. Siebert v. Allen, 2007 WL 3047086, at *1 (M.D.Ala. Oct.17, 2007). I thus cannot accept the majority’s conclu: sion that Callahan’s cause of action began to accrue five years before his execution date was set, during which time Alabama could, and in fact did, amend its lethal injection protocol.[1]
A better approach would be to fix the date of accrual when Callahan knew or had reason to know the details of the protocol to be used in his execution and when his habeas challenge to his sentence was exhausted. Placing the accrual date after the completion of habeas proceedings would have “provide[d] clarity and certainty to both the death-sentenced inmate and the State that the sentence [was] final and not susceptible to attack, that the execution date [was] set, and that the protocol for [the] execution [was] likely fixed.” Cooey, 479 F.3d at 429 (Gilman, J., dissenting). Moreover, in future cases, this approach would avoid the problematic outcomes that the majority’s decision will produce: that death-sentenced prisoners will be required to pursue method-of-execution challenges several years prior to their executions and during the same time they are challenging their convictions and sentences on habeas.[2]
Finally, the majority expresses the concern that placing the accrual date after the completion of habeas proceedings would enable prisoners to “veto” the state’s ability to effectuate its judgments by unreasonably delaying their § 1988 actions. However, the Supreme Court has recognized that prisoners seeking stays of execution must establish a significant likelihood of success on the merits, including overcoming a presumption against entry of a stay where the claim could have been brought earlier. Nelson v. Campbell, 541 U.S. 637, 650, 124 S.Ct. 2117, 158 L.Ed.2d 924 (2004). In my view, therefore, the majority’s concern in this regard is unpersuasive.
For these reasons, I respectfully dissent.

. Alabama most recently revised its lethal injection protocol on October 26, 2007.

. It is noteworthy that in Jones v. Allen, 483 F.Supp.2d 1142 (M.D.Ala.2007), the court recognized that according to general tort principles, " 'the statute [of limitations] does not usually begin to run until the tort is complete,' ” and a " 'tort is ordinarily not complete until there has been an invasion of a legally protected interest of the plaintiff.' ” Id. at 1148 (alterations in original) (quoting Rest.2d Torts § 899 cmt. c). As such, where a defendant challenges the constitutionality of an event that has not yet occurred, i.e., the method of execution, the statute of limitations inquiry is not applicable; rather, only equitable considerations (such as those associated with comity, finality, federalism, and laches) are relevant. Id. at 1149-51.