# SUPREME COURT OF THE UNITED STATES

No. 09–7839 (09A521)

CECIL C. JOHNSON *v.* PHIL BREDESEN, GOVERNOR OF TENNESSEE, ET AL.

ON APPLICATION FOR STAY AND ON PETITION FOR A WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

[December 2, 2009]

The application for stay of execution of sentence of death presented to JUSTICE STEVENS and by him referred to the Court is denied. The petition for a writ of certiorari is denied.

Statement of JUSTICE STEVENS, with whom JUSTICE BREYER joins, respecting the denial of certiorari.

Petitioner Cecil Johnson, Jr., has been confined to a solitary cell awaiting his execution for nearly 29 years.[1] Johnson bears little, if any, responsibility for this delay. After his execution date was set and on the day the Governor of Tennessee denied him clemency, Johnson brought this Eighth Amendment challenge under Rev. Stat. §1979, 42 U. S. C. §1983 to enjoin the State from executing him after this lengthy and inhumane delay. See *Lackey* v. *Texas*, 514 U. S. 1045, 1045–1046 (1995) (STEVENS, J., statement respecting denial of certiorari); see also *Thompson* v. *McNeil*, 556 U. S. \_\_\_, \_\_\_ (2009) (same); *id.*, at \_\_\_ (BREYER, J., dissenting from denial of certiorari). Because

---

[1] "Inmates who are under a sentence of death shall be single-celled and housed in a maximum security unit separate from the general population." State of Tennessee, Dept. of Correction, Administrative Policies and Procedures, Index #506.14(VI)(B)(2) (2009), online at http://www.state.tn.us/correction/pdf/ 506-14.pdf (as visited Dec. 1, 2009).

I remain steadfast in my view "that executing defendants after such delays is unacceptably cruel," *id.*, at ___ (slip op., at 4), I would grant the stay application and the petition for certiorari.

Johnson was tried and convicted of three counts of first-degree murder in 1981. He continues to maintain his innocence. Complaint ¶9. There was no physical evidence tying Johnson to the crime. See *Johnson* v. *Bell*, 525 F. 3d 466, 490 (CA6 2008) (Cole, J., dissenting). In 1992 a change in state law gave Johnson access, for the first time, to substantial evidence undermining key eyewitness testimony against him. *Id.*, at 473. This evidence calls into question the persuasive force of the eyewitness' testimony, and, consequently, whether Johnson's conviction was infected with constitutional error. See *Brady* v. *Maryland*, 373 U. S. 83 (1963); *Johnson*, 525 F. 3d, at 490 (Cole, J., dissenting). The merits of Johnson's *Brady* claim are not before us; we denied certiorari on this issue several months ago. No. 08–7163, 557 U. S. ___ (2009). But the constitutional concerns raised by Judge Cole's dissent only underscore my strongly held view that state-caused delay in state-sponsored killings can be unacceptably cruel. See *Thompson*, 556 U. S., at ___ (slip op., at 3–4).[2] We cannot know as a definitive matter whether, if the State had not withheld exculpatory evidence, Johnson would have been convicted of these crimes. We do know that Johnson would not have waited for 11 years on death row before the State met its disclosure obligations. In short, this is as compelling a case as I have encountered for addressing the constitutional concerns that I raised in *Lackey*.

―――――――――

[2] The possibility that there was constitutional error in Johnson's case is far from unique. See Root, Cruel and Unusual Punishment: A Reconsideration of the *Lackey* Claim, 27 N. Y. U. Rev. L. & Soc. Change 281, 312–313 (2002) (discussing error rates in capital trials) (citing J. Liebman, J. Fagan, & V. West, A Broken System: Error Rates in Capital Cases, 1973–1995, p. 5 (2000)).

This case deserves our full attention for another reason. Johnson has brought his Eighth Amendment claim under 42 U. S. C. §1983. More typically, such claims have been brought in habeas corpus. See, *e.g.*, *Thompson* v. *Secretary for Dept. of Corrections,* 517 F. 3d 1279, 1280 (CA11 2008) *(per curiam)*; *Allen* v. *Ornoski*, 435 F. 3d 946, 956–960 (CA9 2006); cf. *Knight* v. *Florida*, 528 U. S. 990, 998 (1999) (BREYER, J., dissenting from denial of certiorari) (discussing *Lackey* claim raised after state resentencing on successful habeas corpus petition). This case's posture raises two important questions: whether a *Lackey* claim is cognizable under §1983; and, if it is not, whether a second federal habeas petition raising a *Lackey* claim is a successive petition under 28 U. S. C. §2244(b)(2). The Sixth Circuit agreed with the District Court's conclusion that a standalone *Lackey* challenge under §1983 is the "functional equivalent" of a habeas corpus challenge, App. to Pet. for Cert. B-9 (District Court opinion), and thus must proceed under 28 U. S. C. §2244(b)(2)'s successive petition bar, see *Allen*, 435 F. 3d, at 956–960. The resolution of these questions below poses a nearly insurmountable hurdle for those seeking to raise similar Eighth Amendment challenges.

In my view, these procedural questions are inextricably linked to the two underlying evils of intolerable delay. First, the delay itself subjects death row inmates to decades of especially severe, dehumanizing conditions of confinement. See *Thompson*, 556 U. S., at \_\_\_ (slip op., at 2) (STEVENS, J., respecting denial of certiorari); *Lackey*, 514 U. S., at 1046–1047 (same); see also *Furman* v. *Georgia*, 408 U. S. 238, 288 (1972) (Brennan, J., concurring) ("[T]he prospect of pending execution exacts a frightful toll during the inevitable long wait between the imposition of sentence and the actual infliction of death"). Second, "delaying an execution does not further public purposes of retribution and deterrence but only diminishes whatever

possible benefit society might receive from petitioner's death." *Thompson*, 556 U. S., at ___ (slip op., at 2) (STEVENS, J., respecting denial of certiorari). In other words, the penological justifications for the death penalty diminish as the delay lengthens. *Id.*, at ___ (slip op., at 2); *Lackey*, 514 U. S., at 1046–1047. Thus, I find constitutionally significant both the conditions of confinement and the nature of the penalty itself.

In light of these coextensive concerns, I find it quite difficult to conclude, as the courts below did, that Johnson's §1983 action is the functional equivalent of a habeas petition. Both the gravamen of petitioner's complaint and one of the central concerns animating *Lackey* is that the "method" of the State's execution of a death sentence—a lengthy delay due in no small part to the State's malfeasance in this case—is itself unconstitutional. We have held that "method" of execution claims are cognizable under §1983. *Hill* v. *McDonough*, 547 U. S. 573, 580 (2006); see also *Nelson* v. *Campbell*, 541 U. S. 637, 645–647 (2004). But a successful *Lackey* claim would have the effect of rendering invalid a particular death sentence, suggesting that Johnson's *Lackey* claim "directly call[s] into question the 'fact' or 'validity' of the sentence itself," *Nelson*, 541 U. S., at 644. Were petitioner to prevail, it is true that the State will not be able to go forward in this case "by simply altering its method of execution," *ibid.* On the other hand, it is equally true that, had the State not carried out his sentence in this intolerably cruel manner, the State would have been quite free, as a constitutional matter, to "go forward with the sentence," *ibid.*

Although the Court of Appeals' treatment of Johnson's claim as a habeas challenge is a close question, its decision to apply §2244(b)(2)'s successive habeas bar is not. The Sixth Circuit's decision has the curious effect of forcing Johnson to bring a *Lackey* claim prematurely, possibly at a

time before it is ripe.[3]  Moreover, construing this claim as the functional equivalent of a habeas action also has the unfortunate effect of inviting further delay: A petitioner would be compelled to return to state court to exhaust his *Lackey* claim in the first instance under 28 U. S. C. §2254(b)(1).  For these reasons, I am persuaded that a *Lackey* claim, like a claim that one is mentally incompetent to be executed, should, at the very least, not accrue until an execution date is set.  See *Ceja* v. *Stewart*, 134 F. 3d 1368, 1371–1372 (CA9 1998) (Fletcher, J., dissenting); cf. *Panetti* v. *Quarterman,* 551 U. S. 930, 945 (2007).

When I first expressed my views in *Lackey*, I did not envision such procedural obstacles to the consideration of a claim that nearly three decades of delay on death row, much of it caused by the State, has deprived a person of his Eighth Amendment right to avoid cruel and unusual punishment.  One does not need to accept the proposition "that the imposition of the death penalty represents 'the pointless and needless extinction of life with only marginal contributions to any discernible social or public purposes,'" *Baze* v. *Rees*, 553 U. S. 35, \_\_\_, (2008) (slip op., at 17) (STEVENS, J., concurring in judgment) (quoting *Furman*, 408 U. S., at 312 (White, J., concurring)), in order to agree that the imposition of the death penalty on these extreme facts is without constitutional justification.  Most regrettably, a majority of this Court continues to find these issues not of sufficient weight to merit our attention.

———————

[3] The State argues, and the courts below agreed, that Johnson should have brought his Eighth Amendment claim in the federal habeas proceeding he commenced in 1999.  At that point in time, Johnson had been on death row for 18 years.  This was one year longer than the petitioner in *Lackey*.  Of course, by 1999, the Court had denied certiorari in *Lackey* and in *Knight* v. *Florida*, 528 U.S. 990, which involved a 19-year delay.  Therefore, when Johnson filed his federal habeas action, he had reason to believe that an 18-year delay was not long enough to trigger Eighth Amendment concerns and that any *Lackey*-based claim was premature.