**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 11a0764n.06

**No. 11-4183**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| REGINALD BROOKS, | ) | **FILED** |
|  | ) | ***Nov 14, 2011*** |
| Petitioner-Appellant, | ) | LEONARD GREEN, Clerk |
|  | ) |  |
| v. | ) | ON APPEAL FROM THE UNITED |
|  | ) | STATES DISTRICT COURT FOR THE |
| DAVID BOBBY, Warden, | ) | NORTHERN DISTRICT OF OHIO |
|  | ) |  |
| Respondent-Appellee. | ) |  |

Before: SUTTON, McKEAGUE and GRIFFIN, Circuit Judges.

PER CURIAM. Reginald Brooks moves to stay his execution while he continues to litigate two claims in state court: (1) that he is incompetent to be executed, *see Ford v. Wainwright*, 477 U.S. 399, 410 (1986); and (2) that the State withheld evidence and failed to correct misleading testimony during his trial, *see Brady v. Maryland*, 373 U.S. 83, 87 (1963); *Napue v. Illinois*, 360 U.S. 264, 269 (1959). The state trial court and the state intermediate appellate court rejected both claims, R. 61-2; R. 102-2; R. 106-1, and the Ohio Supreme Court denied Brooks' motion to stay his execution while he seeks review in that court. Brooks asks us to do what the state courts (and the Ohio Governor) thus far have not—to stay his execution while he presents these claims to the Ohio Supreme Court so that, if unsuccessful there, he may later litigate the claims here in a federal habeas proceeding. We deny the request.

Brooks' motion, in the first place, suffers from a timeliness problem, at least as to his *Ford* claim. There is a "strong equitable presumption" against granting a stay to allow litigation of a claim that could have been brought early enough "to allow consideration of the merits without requiring entry of a stay." *Nelson v. Campbell*, 541 U.S. 637, 650 (2004). The Ohio Supreme Court issued an order on March 1, 2011, setting Brooks' execution for November 15, yet Brooks waited more than five-and-a-half months—until August 23—to file his *Ford* claim in state court. But for this unexplained delay, all of the state appellate courts would have had a full opportunity to rule on the claim's merits, while at the same time potentially giving Brooks an opportunity to file a *Ford* claim in a federal habeas petition.

One problem with eleventh-hour filings is presented here. Brooks seeks a stay from us while the Ohio Supreme Court considers the merits of his *Ford* and *Brady* claims. At this point, less than 24 hours before the State's scheduled execution, we have a decision from an intermediate state appellate court rejecting the claims on the merits, a ruling that, if affirmed and if affirmed on these grounds, would be entitled to AEDPA deference in a subsequent federal habeas petition. In thinking about the likelihood that Brooks will succeed on the merits, it seems appropriate in one sense to give AEDPA deference to that ruling. After all, the only state-court rulings thus far have rejected the claims on the merits. Yet, in another sense, it is strange to give AEDPA deference to a less-than-final decision. The practicalities of today's motion offer a sensible way of resolving any potential dilemma. Because a federal habeas petition likely would come before us only if the Ohio Supreme Court denies review altogether or affirms the state appellate court's ruling on the merits—inmates

do not premise habeas petitions on state-court victories—we will apply AEDPA deference to the state appellate court's ruling in addressing this stay motion.

As to the merits of Brooks' claims, he has no likelihood of success, which "by itself suffices to" deny the stay. *Bedford v. Bobby*, 645 F.3d 372, 377 (6th Cir. 2011). Start with the *Ford* claim. The Eighth Amendment prohibits a State from executing a prisoner who is "insane," *Ford*, 477 U.S. at 410, that is, who lacks a "rational understanding" of the "reason for his execution." *Panetti v. Quarterman*, 551 U.S. 930, 959 (2007). After conducting a competency evaluation at state expense and holding a lengthy (four-day) evidentiary hearing, the state trial court rejected Brooks' *Ford* claim, finding he "has both a factual and rational understanding of [his] crimes, is aware of his impending death, and is able to causally relate the murders with his punishment." R. 61-2 at 6. The Ohio Court of Appeals affirmed this finding. R. 106-1 at 12. To secure habeas relief on his *Ford* claim, Brooks must show that this decision "was based on an unreasonable determination of the facts in light of the evidence presented" or was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d). He cannot overcome these hurdles. The state appellate court reasonably adopted the trial court's factual finding that, although Brooks suffers from "paranoid schizophrenia" and "grandiose delusions," he still has a rational understanding of the reasons for his execution. R. 61-2 at 4-7; R. 106-1 at 12. And both of the state court decisions laid out the correct standard of competence from *Ford* and *Panetti*, R. 61-2 at 4; R. 106-1 at 8-12, a framework that "suggests a

range of reasonable applications," *Bedford*, 645 F.3d at 378, and reasonably applied that standard to Brooks.

Brooks persists that Ohio's statutory scheme for evaluating *Ford* claims denied him the effective assistance of counsel by requiring that the state trial court issue a ruling within sixty days of the claim's filing. Ohio Rev. Code § 2949.28(B)(3). But Brooks' attorneys (one of whom the State paid for) had an opportunity to conduct discovery, present their own evidence and cross-examine the State's expert witness. States need not give prisoners unlimited opportunities to prove they are incompetent to be executed, *see Ford*, 477 U.S. at 416–17, and Brooks has not shown that sixty days was an insufficient amount of time to allow his attorneys to perform effectively.

The *Brady* claim fares no better. Brooks argues that the State violated *Brady* by failing to turn over statements from several family members and acquaintances documenting his erratic behavior before the murders. Brooks' lawyers apparently discovered this evidence in the State's files for the first time while investigating Brooks' *Ford* claim. To establish a *Brady* violation, Brooks must show (1) that the evidence was favorable to him because it was either exculpatory or impeaching, (2) that the State suppressed the evidence, and (3) that the State's failure to disclose the evidence prejudiced him. *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999). Even if Brooks could satisfy the first two elements, a point we need not decide, he cannot show prejudice, which requires demonstrating "a reasonable probability of a different result." *Banks v. Dretke*, 540 U.S. 668, 699 (2004). The state trial court rejected Brooks' *Brady* claim on the ground that the evidence would not have made a difference because it was duplicative of evidence already in Brooks' possession and

cumulative of evidence already presented at trial, including Brooks' diagnosis as a paranoid schizophrenic. R. 102-2. The state appellate court affirmed that conclusion. R. 106-1 at 16-19. The state courts' determination is a reasonable one, which precludes habeas relief. *See* 28 U.S.C. § 2254(d). Because the court of conviction already knew that Brooks was a paranoid schizophrenic, a few anecdotes of erratic behavior (on top of other anecdotes of erratic behavior already presented at the first trial) likely would not have produced a different outcome.

The supporting affidavit submitted by Judge Harry Hanna, one of the three judges who sat on the panel that convicted Brooks and sentenced him to death and who is now a visiting (*e.g.*, senior) judge, is not the kind of thing we see every day. But it does not change things, and it would establish a dangerous precedent if it did. In his new capacity, Judge Hanna says that, if he knew then what he knows now, he "would have voted for a sentence less than death," a point he also made in support of Brooks' clemency application. Yet the Federal Constitution does not require a state court to accept this kind of statement, made some 28 years after the fact, much less give it meaningful weight in resolving a *Brady* claim. *Cf. Nields v. Bradshaw*, 482 F.3d 442, 460–61 (6th Cir. 2007) (affidavit from juror that she would have given new mitigation evidence "considerable weight" not sufficient to set aside state court finding of no prejudice). Nor, it follows, did the state courts act unreasonably in failing to give the statement meaningful weight.

Brooks' *Napue* claim fails for a similar reason. He argues that prosecutors violated *Napue* by failing to correct the following statement in a psychiatric report from Dr. Billowitz: "[I]n my opinion it is very doubtful that [Brooks] suffered from extremely bizarre and grossly disorganized

- 5 -

delusions, since it is very likely that such gross abnormalities would have . . . been made clearly manifest to outsiders." R. 73-2 at 21. Even if we assume for the sake of argument that the witness statements about Brooks' erratic behavior made Dr. Billowitz's statement misleading, Brooks still must show that failing to "correct" this testimony could "in any reasonable likelihood have affected the judgment of the" factfinders. *Napue*, 360 U.S. at 271. He cannot do so. Dr. Billowitz still reported that Brooks' psychological tests showed he was "schizophrenic." R. 84 at 33. Given what the factfinders already knew about Brooks' psychiatric condition, as the state trial and appellate courts recently found, there is no reasonable probability that the few anecdotes of erratic behavior contained in the new evidence would have changed the outcome. R. 102-2; R. 106-1.

For these reasons, Brooks' motion for a stay of execution is denied.