RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 20a0051p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

MICHAEL K. BAILEY,

        *Petitioner-Appellant*,

*v.*

No. 18-3581

LYNEAL WAINWRIGHT, Warden,

        *Respondent-Appellee*.

─────────────────

Appeal from the United States District Court
for the Northern District of Ohio at Toledo.
No. 3:18-cv-00881—Dan A. Polster, District Judge.

Argued: October 22, 2019

Decided and Filed: February 20, 2020

Before: SUTTON, KETHLEDGE, and STRANCH, Circuit Judges.

─────────────────

## COUNSEL

**ARGUED:** Erin E. Cady, KIRKLAND & ELLIS LLP, Washington, D.C., for Appellant. Jerri Fosnaught, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellee. **ON BRIEF:** Erin E. Cady, Erin E. Murphy, KIRKLAND & ELLIS LLP, Washington, D.C., for Appellant. Jerri Fosnaught, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellee.

    SUTTON, J., delivered the opinion of the court in which KETHLEDGE, J., joined. STRANCH, J. (pp. 6–8), delivered a separate dissenting opinion.

---

**OPINION**

---

SUTTON, Circuit Judge.  Michael Bailey petitioned a federal district court for a writ of habeas corpus because he believes the Ohio Parole Board violated his right to due process by relying on inaccurate records about the nature of his underlying murder conviction.  The district court dismissed the § 2254 petition because it did not state a plausible claim for habeas relief. We affirm.

I.

We may never know exactly what happened in the Dutch Village Carryout, a roadside store near Toledo, Ohio, on December 14, 1974.  But we do know that an Ohio jury believed (beyond a reasonable doubt) that Bailey murdered Thomas Cannon, the Carryout's clerk.  Bailey does not dispute his conviction for Cannon's murder, but he does dispute how Ohio's parole board has described his crime.  As Bailey tells it, he entered the store at his accomplice's behest, robbed the cash register at gunpoint, then shot Cannon twice—once in the neck, once in the head.  As the Ohio Parole Board tells it, Bailey entered the store, robbed Cannon, forced him to the ground, "told him . . . exactly what he was planning on doing," placed the gun to the back of his head and shot him "execution style." R.1 at 18.  The Board also ascribes to Bailey motives he believes inaccurate: "[H]e was in need of money and planned on performing robberies until he had the amount needed and he stated the only way he was going to be successful was to kill all witnesses." *Id.*

Bailey first learned about the Board's description in 2016.  Two years before, the Ohio Supreme Court had ruled that Ohio prisoners had a right under Ohio law to a factually accurate parole record. *State ex rel. Keith v. Ohio Adult Parole Auth.*, 24 N.E.3d 1132, 1137 (Ohio 2014). To vindicate this right, several Ohio prisoners, including Bailey, successfully petitioned the Board for their parole candidate information sheets, which include a description of the prisoner's offense.  Bailey reviewed his sheet and discovered that the Board's version of events did not

match his recollection.  He asked the agency, as a result, to edit the sheet's description.  Bailey and the Board corresponded about the alleged inaccuracies for the next several months.

The Board eventually sent him a letter containing an updated sheet.  Except for changing the date of his offense (the sheet initially listed it as December 14, 1971), the description of Bailey's crime remained the same.  The letter explained that the Board had reviewed Bailey's pre-sentence investigation report and modified his sheet accordingly.  This struck Bailey as odd, because the trial court had sentenced him minutes after his conviction, suggesting the State never created a *pre*-sentence investigation report.  When Bailey pointed out this discrepancy, the Board admitted that it had inadvertently described Bailey's *post*-sentence investigation report as his *pre*-sentence investigation report.  But the letter offered no other explanation about why the description of Bailey's crime remained the same.  Convinced the Board had gotten it wrong, Bailey ordered his trial transcript and sent the Board another letter offering to meet with a representative to show them that testimony at the trial contradicted the description in his sheet.  Bailey also filed a motion with the Lucas County Court of Common Pleas to correct his parole record.  The Board and the court denied his request.

Bailey appealed the court's decision.  An Ohio appellate court affirmed, noting that the lower court lacked jurisdiction to hear Bailey's motion.  The Ohio Supreme Court denied Bailey's request for a discretionary appeal.

Bailey took his case to federal court, filing this habeas petition under 28 U.S.C. § 2254.  The Board violated his Fourteenth Amendment right to due process, he alleged, when it refused to investigate his record and correct inaccuracies in its description of his crime.  The district court dismissed his petition and his motion for reconsideration on the ground that he failed to state a plausible claim for habeas corpus relief.  We granted Bailey a certificate of appealability.

II.

Section 2254(a) permits courts to "entertain an application for a writ of habeas corpus . . . only on the ground that [a petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  Most habeas cases implicate the "in custody" or "in violation of" federal law requirement by themselves.  We face a different

problem—a prisoner who does not purport to be in custody in violation of federal law, but who is in custody, complains of an unconnected violation of federal law, and claims a right to proceed all the same under § 2254(a).

The words "in custody" convey any conditions that "significantly restrain" a petitioner's "liberty," *Jones v. Cunningham*, 371 U.S. 236, 243 (1963), such as imprisonment, parole restrictions, or consecutive sentences. *Peyton v. Rowe*, 391 U.S. 54, 64–65 (1968) (physical restraint and consecutive sentences); *Jones*, 371 U.S. at 242–43 (parole). The phrase "in violation of the Constitution or laws or treaties of the United States" has an equally straightforward meaning. A petitioner must claim that his custody violates federal law, not state law, not some other source of law. *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (per curiam).

Bailey satisfies each of these requirements in isolation. He is "in custody" because he is serving a life sentence. And his petition rests on a violation of federal law because he claims that Ohio violated his Fourteenth Amendment due process rights. But he has not tied the two together. Bailey does not contend that he is in custody in violation of federal law—in other words, that he is in custody due to a violation of federal law. At its core, Bailey's petition alleges only that he has been deprived of an accurate parole record in violation of federal law. That kind of claim falls outside § 2254(a)'s domain.

Consider Bailey's complaints. He argues, first, that Ohio created a protected liberty interest in an accurate parole record and deprived him of that interest without due process when the Board failed to correct the alleged inaccuracies in the file. He argues, second, that due process independently prevents the Board from making arbitrary decisions, such as refusing to correct a flawed parole record. The problem with both theories is the same: Bailey does not explain how either of them would cause him to obtain parole or otherwise change his custody status.

He does not make this argument because he cannot make this argument. Ohio does not give inmates a right to parole; the Board has authority to grant or deny a candidate's application at its discretion. *Keith*, 24 N.E.3d at 1135–36. As a result, Bailey cannot argue that, but for the allegedly inaccurate description, the Board would grant him parole.

Bailey claims that two of our cases, *Adams v. Bradshaw* and *Terrell v. United States*, make his application cognizable. Not so.

*Adams* treated a state prisoner's attack on Ohio's lethal-injection procedures as a claim that, "if successful, could render his death sentence effectively invalid." 644 F.3d 481, 483 (6th Cir. 2011) (per curiam). That case supports our conclusion, not Bailey's. A challenge to a judgment, including one based on the method of implementing the sentence, challenges the extent of an inmate's custody. *See Nelson v. Campbell*, 541 U.S. 637, 644 (2004) ("[A] constitutional challenge seeking to permanently enjoin the use of lethal injection may amount to a challenge to the fact of the sentence itself.").

*Terrell* involved two federal prisoners using a *§ 2241 petition* to allege that the federal government violated their due process rights because it did not provide them in-person parole hearings. 564 F.3d 442, 445 (6th Cir. 2009). We held that the district court had jurisdiction over their petition, even though the prisoners did not challenge their custody. *Id.* But our interpretation of § 2241 does not control our interpretation of § 2254. *See Ahearn v. Jackson Hosp. Corp.*, 351 F.3d 226, 235 (6th Cir. 2003). On top of that, § 2241 creates a broader set of avenues for relief. It permits relief if the claimant shows any of the following: he or she (1) is in the United States' custody or "committed for trial before some court thereof," (2) is in custody for following a federal law or judicial order, (3) is in custody in violation of federal law, (4) is a foreign national who claims his or her custody violates international law, or (5) the writ is needed to bring the claimant to court to testify or for trial. 28 U.S.C. § 2241(c). By contrast, § 2254 permits relief only if the petitioner "is in custody in violation of" federal law. *Id.* § 2254(a). Nothing in *Terrell* shows that it granted relief on the grounds permitted by § 2254.

This conclusion, it is true, takes Bailey to the end of one road for relief. But it does not foreclose another. Nothing prevents Bailey from using § 1983 to raise these or similar claims. *See, e.g.*, *Ohio Adult Parole Auth. v. Woodard*, 523 U.S. 272 (1998); *Nettles v. Grounds*, 830 F.3d 922, 935–36 (9th Cir. 2016) (en banc). While we affirm the dismissal of Bailey's petition, we do so without prejudice to his filing a new claim under § 1983.

We affirm.

_____

**DISSENT**

_____

JANE B. STRANCH, Circuit Judge, dissenting.  Because the majority misapplies binding circuit precedent, I respectfully dissent.

The majority holds that relief pursuant to 28 U.S.C. § 2254 is unavailable to a state prisoner who cannot show that "but for" an alleged constitutional violation, there "would" be a change in custody status.  *Adams v. Bradshaw*, 644 F.3d 481, 483 (6th Cir. 2011), says otherwise.  There, a capital habeas petitioner proceeding under § 2254 challenged a specific lethal-injection protocol under the Eighth Amendment: we held that "[w]hereas it is true that certain claims that can be raised in a federal habeas petition cannot be raised in a § 1983 action, it does not necessarily follow that any claim that can be raised in a § 1983 action cannot be raised in a habeas petition."  *Id.* (citations omitted).  More critically, we explained that Adams's lethal-injection claim was cognizable in habeas because "if successful, [it] *could* render his death sentence effectively invalid."  *Id.* (emphasis added).  We did not require Adams to show that he *would* incur a change in custody status should he prevail.  Indeed, we rejected the imposition of such a burden.  *Id.*  The relief that Adams requested would not have guaranteed a change to his sentence; it would have made a change to his sentence more likely, which was sufficient to make his claims cognizable in habeas.

Michael Bailey's case involves just the kind of probabilistic change to custody that was at issue in *Adams*.  He was convicted in 1975 and became eligible for parole after 15 years in jail.  He applied for parole 8 times over the following 30 years and was denied each time.  Bailey first became aware in 2015 that his parole record contained an incorrect and inflammatory description of his crime.  He sought to correct his parole records to accurately reflect the testimony at trial, which would have increased his chances of parole.  Ohio authorities could deny Bailey parole despite accurate records.  But because relief would make a change in custody more likely, Bailey has sufficiently claimed to be in custody in violation of federal law.  § 2254(a).  The majority's attempt to distinguish *Adams* misses the critical point that Adams's collateral attack sought only a probabilistic change in custody.  Its citation in the same paragraph to *Nelson v. Campbell*, a

case about the breadth of § 1983, not § 2254, further reveals this error.  541 U.S. 637, 644 (2004).  The majority invokes *Nelson* for the proposition that "a constitutional challenge seeking to permanently enjoin the use of lethal injection *may* amount to a challenge to the fact of the sentence itself."[1]  *Id.*  (emphasis added).  But that is exactly my point.  Here too, Bailey's challenge *may* amount to a challenge to the duration of his sentence.

In *Terrell v. United States*, moreover, we expressly rejected the proposition that habeas and § 1983 are mutually exclusive remedies.  564 F.3d 442, 448-49 (6th Cir. 2009).  *Terrell* involved a challenge to parole procedures that, like Bailey's claim, would not have guaranteed a change in his sentence.  *Id.* at 445-46.  We reasoned: "[o]ur cases have held that [such challenges] can both be brought under habeas and the equivalent civil action."  *Id.* at 448.  The majority attempts to distinguish *Terrell* on the grounds that Terrell was a federal prisoner proceeding under § 2241, whereas Bailey is a state prisoner seeking relief through § 2254.  The majority declares, "our interpretation of § 2241 does not control our interpretation of § 2254."  To support this proposition, it cites to *Ahearn v. Jackson Hosp. Corp.*, 351 F.3d 226, 235 (6th Cir. 2003), a case distinguishing the requirements for injunctive relief under the National Labor Relations Act from those in § 706(f)(2) of Title VII of the Civil Rights Act of 1964.  *Ahearn* provides no foundation for the majority's conclusion.  Section 2241 and § 2254 are separate statutes.  But they are intertwined statutes.  They provide parallel avenues for state and federal prisoners to seek habeas relief, they share key language, and innumerable opinions of this court are devoted to defining their precise relationship.  *See, e.g.*, *Allen v. White*, 185 F. App'x 487, 490 (6th Cir. 2006) ("Federal prisoners who wish to collaterally challenge the execution of their sentences must petition for relief under § 2241.  The same is not true of state prisoners who proceed under § 2254, because § 2254 allows state prisoners to collaterally attack either the imposition *or* the execution of their sentences.").  Our *Terrell* opinion establishes that in the Sixth Circuit some claims can be cognizable both in habeas and § 1983.  The majority's citation to the Ninth Circuit's decision in *Nettles v. Grounds*, 830 F.3d 922 (9th Cir. 2016) does nothing to defeat the binding nature of our precedent.

---

[1]Challenges to the "fact of" and "duration of" a sentence both equally sound in habeas.  *Nelson v. Campbell*, 541 U.S. 637, 643 (2004).

Because the majority forecloses an avenue of relief that our binding precedent expressly holds open, I respectfully dissent.