[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-12167
Non-Argument Calendar
_____

D.C. Docket No. 1:17-cv-01705-SCJ


J. W. LEDFORD, JR.,

Plaintiff - Appellant,

versus

COMMISSIONER, GEORGIA DEPARTMENT OF CORRECTIONS,
WARDEN,
OTHER UNKNOWN EMPLOYEES AND AGENTS,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____


Before ED CARNES, Chief Judge, HULL and JORDAN, Circuit Judges.

HULL, Circuit Judge:

Under a sentence of death, J.W. Ledford, Jr. has his execution scheduled for Tuesday, May 16, 2017, at 7:00 p.m.  On Thursday, May 11, 2017, a mere five days before his execution, Ledford challenged Georgia's method of his execution by filing a civil complaint under 42 U.S.C. § 1983.  Since 2013, Georgia's execution protocol has provided for lethal injection by the administration of a single drug:  five grams (5,000 milligrams) of compounded pentobarbital.

After briefing, the district court denied Ledford's motion for a temporary restraining order and dismissed Ledford's § 1983 complaint.  The district court determined, inter alia, (1) that Ledford's § 1983 claims are time barred; (2) that, in any event, Ledford had not shown a substantial likelihood of success on the merits of his § 1983 claims; and (3) that, alternatively, Ledford had not carried his burden to demonstrate that equitable relief, such as a stay, should be granted at this late hour.

On May 12, 2017, Ledford filed a Notice of Appeal.  On May 15, 2017, at 11:00 a.m., Ledford filed an "Emergency Motion for an Order Staying the Execution."  After careful review, we deny Ledford's motion.

## I.  BACKGROUND

In 1992, Ledford murdered his 73-year-old neighbor, Dr. Harry Johnston, Jr., robbed Dr. Johnston's wife, and burglarized the Johnstons' home, tying up Mrs. Johnston with a rope.  Ledford v. Warden, Ga. Diagnostic & Classification

2

Prison, 818 F.3d 600, 608-09 (11th Cir. 2016).  A Georgia jury convicted Ledford

of murder, armed robbery, burglary, and kidnapping, and "unanimously

recommended imposition of the death penalty."  Id. at 614.  The Supreme Court of

Georgia affirmed Ledford's conviction and sentence on direct appeal.  Ledford v.

State, 439 S.E. 2d 917 (Ga. 1994).

After the United States Supreme Court denied Ledford's petition for

certiorari, Ledford v. Georgia, 513 U.S. 1085, 115 S. Ct. 740 (1995), Ledford

sought state habeas corpus relief in the Superior Court of Butts County, Georgia.

Ledford, 818 F.3d at 615.  That petition was denied on July 27, 1999, and the

Supreme Court of Georgia denied him a certificate of probable cause to appeal in

2001.  Id. at 620-21.  The United States Supreme Court thereafter again denied

certiorari.  Ledford v. Turpin, 534 U.S. 1138, 122 S. Ct. 1086 (2002).

Ledford then timely filed a 28 U.S.C. § 2254 petition in the federal district

court, in which he pled multiple claims.  On March 19, 2008, the district court

denied Ledford's § 2254 petition.  Ledford, 818 F.3d at 628.  On February 27,

2014, the district court denied reconsideration.  Id. at 631.  This Court affirmed the

denial of Ledford's § 2254 petition.  Id. at 608, 651.  This Court also denied

Ledford's petition for rehearing en banc.  Ledford v. Warden, Ga. Diagnostic &

Classification Prison, No. 14-15650 (11th Cir. May 18, 2016).  The United States

Supreme Court denied certiorari for a third time.  Ledford v. Sellers, __ U.S. __, __

3

S. Ct. __, No. 16-6444, 2017 WL 1199485 (Apr. 3, 2017).  The United States

Supreme Court subsequently denied Ledford's petition for rehearing.  Ledford v.

Sellers, __ U.S. __, __ S. Ct. __, No. 16-6444, 2017 WL 2039266 (May 15, 2017).

## II.  STANDARD OF REVIEW

The standard governing a stay pending appeal is the same as the standard

applicable to a motion for a temporary restraining order.  A stay pending appeal is

appropriate only if the moving party establishes:  "(1) a substantial likelihood of

success on the merits; (2) that the [stay] is necessary to prevent irreparable injury;

(3) that the threatened injury outweighs the harm the [stay] would cause the other

litigant; and (4) that the [stay] would not be adverse to the public interest."

Gissendaner v. Comm'r, Ga. Dep't of Corr., 779 F.3d 1275, 1280 (11th Cir. 2015)

(quoting Wellons v. Comm'r, Ga. Dep't of Corr., 754 F.3d 1260, 1263 (11th Cir.

2014)).

## III.  STATUTE OF LIMITATIONS

The State argues, inter alia, that Ledford has not shown a substantial

likelihood of success on the merits because his § 1983 complaint is time-barred.

An untimely complaint cannot succeed on the merits.  Gissendaner, 779 F.3d

at 1280.  A § 1983 challenge to a state's method of execution is subject to the

statute of limitations governing personal injury actions in the state where the

challenge is brought.  Id.  Ledford brought his § 1983 action in Georgia, which has

4

a two-year statute of limitations period for such actions.  See id.; O.C.G.A. § 9-3-33.

The right of action for a method-of-execution challenge "'accrues on the later of the date on which' direct review is completed by denial of certiorari, 'or the date on which the capital litigant becomes subject to a new or substantially changed execution protocol.'"  Gissendaner, 779 F.3d at 1280 (quoting McNair v. Allen, 515 F.3d 1168, 1174 (11th Cir. 2008)).

The United States Supreme Court denied Ledford's petition for certiorari on direct review on January 9, 1995.  Ledford v. Georgia, 513 U.S. 1085, 115 S. Ct. 740 (1995).

In October 2001, Georgia adopted lethal injection as its method of execution.  O.C.G.A. § 17-10-38(a) (stating "[a]ll persons who have been convicted of a capital offense and have had imposed upon them a sentence of death shall suffer such punishment by lethal injection"); Gissendaner, 779 F.3d at 1281. In March 2013, Georgia changed from using a single dose of FDA-approved pentobarbital to using a single dose of compounded pentobarbital.  See Gissendander, 779 F.3d at 1281.  In July 2013, Georgia's lethal injection secrecy act went into effect.  See id.; O.C.G.A. § 42-5-36(d).  This Court has squarely held that these changes made in 2013 are not substantial changes to Georgia's execution protocol.  Gissendaner, 779 F.3d at 1281-82; Wellons, 754 F.3d at 1263-64.  Thus,

5

Ledford's method-of-execution claim accrued in October 2001 and must have been filed by October 2003 to be timely.  See Gissendaner, 779 F.3d at 1280.  This means that Ledford's § 1983 complaint challenging lethal injection, filed on May 12, 2017, is over ten years too late.

In any event, Ledford's § 1983 complaint was not filed even within twenty-four months of that March 2013 change or the July 2013 secrecy act.  Ledford also alleges that he has been taking gabapentin for approximately a decade.  Thus, Ledford's § 1983 claims about the interaction of those two drugs—compounded pentobarbital and gabapentin—are filed too late as well.

"A time-barred complaint cannot justify a stay of execution, regardless of whether its claims have merit."  Gissendaner, 779 F.3d at 1284; see also Henyard v. Sec'y, DOC, 543 F.3d 644, 647 (11th Cir. 2008).  Because Ledford's § 1983 complaint was time-barred, he cannot show a substantial likelihood of success on the merits, and a stay of execution is not warranted.

## IV.  NO SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS

Alternatively, even if his claims were not time-barred, Ledford has failed to show that he is entitled to any relief at this time.

"Capital punishment, including capital punishment by lethal injection, generally is constitutional."  Chavez v. Fla. SP Warden, 742 F.3d 1267, 1271 (11th Cir. 2014).  Because "[s]ome risk of pain is inherent in any method of execution,"

6

the Eighth Amendment "does not demand the avoidance of all risk of pain in carrying out executions," particularly where the pain results "by accident or as an inescapable consequence of death." Baze v. Rees, 553 U.S. 35, 47, 50, 128 S. Ct. 1520, 1529, 1531 (2008) (plurality opinion)

Instead, to prevail on an Eighth Amendment challenge to a state's lethal injection protocol, the plaintiff must establish that the method of execution presents a risk that is "'sure or very likely to cause serious illness and needless suffering,' and give rise to 'sufficiently imminent dangers.'" Glossip v. Gross, 576 U.S. __, __, 135 S. Ct. 2726, 2737 (2015) (quoting Baze, 553 U.S. at 50, 128 S. Ct. at 1531). A plaintiff must establish "an objectively intolerable risk of harm that prevents prison officials from pleading that they were subjectively blameless for purposes of the Eighth Amendment." Chavez, 742 F.3d at 1272 (quoting Baze, 553 U.S. at 50, 52, 61, 128 S. Ct. at 1531). This requires the plaintiff to show two things: "(1) the lethal injection protocol in question creates 'a substantial risk of serious harm,' and (2) there are 'known and available alternatives' that are 'feasible, readily implemented,' and that will 'in fact significantly reduce [the] substantial risk of severe pain.'" Id. (quoting Baze, 553 U.S. at 50, 128 S. Ct. at 1531-32, 1537).

### A.    Substantial Risk of Serious Harm

Ledford does not challenge Georgia's method of execution in administering a single dose of five grams of compounded pentobarbital.  Rather, Ledford asserts an "as-applied" claim that, because he has taken gabapentin for a decade, that dose of pentobarbital, a mega-lethal dose, will not render him insensate quickly enough and that he will suffer serious pain during the execution.

With respect to the first required showing, Ledford's allegations and supporting documents do not establish a substantial risk of serious harm, much less a substantial likelihood of success on the merits of his claims.  As noted above, where an Eighth Amendment cruel and unusual punishment claim alleges the risk of future harm, the conditions presenting the risk must be "'sure or very likely to cause serious illness and needless suffering,' and give rise to 'sufficiently imminent dangers.'"  Glossip, 576 U.S. at __, 135 S. Ct. at 2737(quoting Baze, 553 U.S. at 50, 128 S. C.t at 1531) (quotation marks omitted); Wellons, 754 F.3d at 1265.  The factual allegations in Ledford's complaint and the supporting evidence do not establish that it is sure or very likely that Ledford will suffer serious injury or needless suffering during his execution.

We need not rely on the second requirement because Ledford has not carried his burden to show a substantial likelihood of success on his claim that, because Ledford has taken gabapentin for a decade, his execution by a lethal injection of

8

five grams of compounded pentobarbital is sure or very likely to cause serious illness and needless suffering.

Ledford admits that fourteen Georgia inmates have been executed with five grams of pentobarbital without incident and he submits the autopsies of some of them. Interestingly, Ledford expressly admits that he is not claiming that any of these inmates (in the autopsies) were sensate during their executions. At page fifteen, footnote ten of his complaint, Ledford states: "Mr. Ledford does not allege that any of these fourteen (14) inmates were conscious or sensate during their executions."

To distinguish his case from the fourteen Georgia executions that occurred without incident, Ledford claims that five grams of pentobarbital will not render him insensate quickly enough because of his history of taking gabapentin. The State's expert directly refutes that claim. For example, Dr. Jacqueline Martin testified that "the amount administered in the Georgia Department of Corrections' Execution Protocol, 5000 mg, is more than sufficient to carry out the execution without causing Plaintiff pain despite the prior administration of 1800 mg of gabapentin per day." And even Ledford's experts do not opine how quickly five grams of pentobarbital will or will not render Ledford insensate. The expert can say only that the use of gabapentin "will diminish the effect of pentobarbital," but the district court stressed, "how much, [Dr.] Berges never says." And the district

9

court pointed out Dr. Martin's observation that the research does "not show that gabapentin's inhibitory effect would survive the large, lethal dose of pentobarbital [used] . . . in judicial execution."  The district court found that Ledford's experts did not demonstrate the substantial risk of severe pain that Ledford must demonstrate.[1]

## B.    Known and Available Alternatives

Alternatively, even assuming arguendo that Ledford has shown a substantial likelihood of success on the first requirement, as to the second requirement, Ledford's complaint fails to state a plausible claim for relief.  As to Georgia's lethal injection method, Ledford does not even attempt to identify an alternative procedure or drug that is "feasible, readily implemented, and in fact significantly reduce[s] a substantial risk of severe pain."  Glossip, 576 U.S. at __, 135 S. Ct. at 2737 (quoting Baze, 553 U.S. at 52, 128 S. Ct. at 1532).  Ledford's complaint includes no allegations that:  (1) there is an alternative drug that will substantially reduce the risks he identifies with compounded pentobarbital; (2) any alternative means of acquiring that alternative drug; or (3) an alternative method of lethal

---

[1]We also reviewed the declaration of Dr. Mark A. Edgar, who reviewed fourteen autopsies, but his opinion about the risk of pain is prefaced with the condition that "if the person were conscious" or "if the prisoners were aware."  Dr. Edgar never opines how long it would take for an inmate who received a five-gram injection of pentobarbital to become insensate.  The opinion of Dr. Joel B. Zivot about the risk of pain is also based on the caveat that "[i]f any inmate was aware or sensate during the process."

10

injection that would substantially reduce the risk Ledford identifies based on his history of taking gabapentin.

For the above reasons, in addition to being time-barred, Ledford's complaint fails to state a plausible claim for relief.  Because Ledford has not shown a substantial likelihood of success on the merits of his challenge to the lethal injection protocol, the motion for a stay is denied.  See Gissendaner, 779 F.3d at 1283.

## V.  FIRING SQUAD CLAIM

We also agree with the district court that Ledford has not alleged sufficient facts to render it plausible that a firing squad is a feasible and readily implemented method of execution in Georgia that would significantly reduce a substantial risk of severe pain.  The Georgia legislature is free, within the parameters established by the United States Constitution, to choose the method of execution it deems appropriate.  Execution by lethal injection has been ruled constitutional.  Boyd v. Warden, Holman Corr. Facility, __ F.3d __, No. 15-14971, 2017 WL 1856071, at *8 (11th Cir. May 9, 2017); Arthur v. Comm'r, Ala. Dep't of Corr., 840 F.3d 1268, 1316 (11th Cir. 2016).  Having authorized a constitutional method of execution,

Georgia "is under no constitutional obligation to experiment with execution by . . .

firing squad." Boyd, 2017 WL 1856071, at *1; Arthur, 840 F.3d at 1315-18.[2]

In fact, Ledford's own expert, Dr. James Williams, a trauma doctor with

expertise in firearms, avers: "At the present time, lethal injection of

pharmacologic agents dominates the field, and, in my opinion, for good reason:

when available and performed appropriately, lethal injection provides us with

arguably the quickest and most humane method of deliberately ending life." While

Dr. Williams opines that "gunshot wounding is—if properly carried out—also an

effective means of accomplishing" death, Dr. Williams never describes gunshot

wounding as a humane method, much less a more humane or the most humane

method.

As the Supreme Court has recognized, "[t]he firing squad, hanging, the

electric chair, and the gas chamber have each in turn given way to more humane

methods [of execution], culminating in today's consensus on lethal injection."

_____

[2]Contrary to Ledford's claims, the Eighth Circuit's decision is not inapposite to our Circuit's precedent. In McGehee v. Hutchinson, the Eighth Circuit vacated the district court's stay of execution, denied a stay, and stated "we concur with the Eleventh Circuit that the State must have access to the alternative and be able to carry out the alternative method relatively easily and reasonably quickly." McGehee v. Hutchinson, 854 F.3d 488, 488 (8th Cir. 2017) (en banc) (per curiam) (citing Arthur v. Comm'r, Ala. Dep't of Corr., 840 F.3d 1268, 1300 (11th Cir. 2016)), cert. denied, 137 S. Ct. 1275 (2017). The Eighth Circuit concluded that the petitioner had not shown "a significant possibility that use of a firing squad is readily implemented and would significantly reduce a substantial risk of severe pain." Id. at 488.
The Sixth Circuit did affirm a district court's stay in a 2-1 opinion over a dissent, but the Sixth Circuit has now voted that case en banc. In re Ohio Execution Protocol, 853 F.3d 822 (6th Cir. 2017), reh'g en banc granted, opinion vacated, No. 17-3076, 2017 WL 1457946 (6th Cir. Apr. 25, 2017), withdrawn from bound volume (May 5, 2017). In any event, both the Sixth and Eighth Circuit cases were about midazolam, not pentobarbital which Georgia uses.

Baze, 553 U.S. at 62, 128 S. Ct. at 1538; see also id. at 42, 128 S. Ct. at 1526-27 ("A total of 36 States have now adopted lethal injection as the exclusive or primary means of implementing the death penalty, making it by far the most prevalent method of execution in the United States."); Furman v. Georgia, 408 U.S. 238, 296-97, 92 S. Ct. 2726, 2756 (1972) (Brennan, J., concurring) ("Our practice of punishing criminals by death has changed greatly over the years.  One significant change has been in our methods of inflicting death.  Although this country never embraced the more violent and repulsive methods employed in England, we did for a long time rely almost exclusively upon the gallows and the firing squad.  Since the development of the supposedly more humane methods of electrocution late in the 19th century and lethal gas in the 20th, however, hanging and shooting have virtually ceased.").

In any event, Ledford asserted this firing squad claim well beyond the two-year statute of limitations governing § 1983 claims in Georgia and thus his firing squad claim is untimely.

## VI.  EQUITABLE RELIEF

As an alternative and independent ground, we deny Ledford's motion for a stay because a stay of execution is an equitable remedy, and Ledford has not carried his burden to demonstrate entitlement to that equitable relief.

13

A stay is an equitable remedy not available as a matter of right, and before a court grants a stay, it must consider "the relative harms to the parties," "the likelihood of success on the merits," and "the extent to which the inmate has delayed unnecessarily in bringing the claim." Nelson v. Campbell, 541 U.S. 637, 649-50, 124 S. Ct. 2117, 2126 (2004). We consider the relative harms to the parties by balancing the competing interests of Ledford and Georgia. Crowe v. Donald, 528 F.3d 1290, 1292 (11th Cir. 2008). "A defendant's interest in being free from cruel and unusual punishment is primary; however, the State's interest in effectuating its judgment remains significant." McNair, 515 F.3d at 1172. Victims of crime also "have an important interest in the timely enforcement of a sentence." Hill v. McDonough, 547 U.S. 573, 584, 126 S. Ct. 2096, 2104 (2006). "[L]ike other stay applicants, inmates seeking time to challenge the manner in which the State plans to execute them must satisfy all of the requirements for a stay, including a showing of a significant possibility of success on the merits." Id.

"Given the State's significant interest in enforcing its criminal judgments, there is a strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay." Nelson, 541 U.S. at 650, 124 S. Ct. at 2126 (citations omitted). In several decisions, this Court has refused to grant a dilatory stay sought on the eve of an execution. See, e.g., Crowe, 528 F.3d at 1294; Diaz v.

14

McDonough, 472 F.3d 849, 851 (11th Cir. 2006); Hill v. McDonough, 464 F.3d 1256, 1259-60 (11th Cir. 2006).

Even if not barred by the statute of limitations, Ledford's claims are barred because he has not timely made them, given he waited until five days before his execution.  In any event, in our balancing of the hardships and equitable relief, we must take into account the fact that the State and the relatives of Ledford's victims have a strong interest in the finality of the criminal judgments and in seeing lawfully imposed sentences carried out in a timely manner.

Our decision in Jones v. Allen provides guidance here.  485 F.3d 635 (11th Cir. 2007), cert. denied, 550 U.S. 930, 127 S. Ct. 2160 (2007).  In that case, the inmate Jones, facing an imminent execution, filed a § 1983 civil action challenging the three-drug protocol in Alabama that had been in existence since 2002, but Jones waited until 2006 to file his civil action.  Id. at 636-38.  This Court concluded that Jones's delay "leaves little doubt that the real purpose behind his claim is to seek a delay of his execution, not merely to effect an alteration of the manner in which it is carried out."  Id. at 640 (quoting Harris v. Johnson, 376 F.3d 414, 418 (5th Cir. 2004)).  Similarly, in the instant case, Georgia has used lethal injection with a single dose of pentobarbital for years, and Ledford has taken gabapentin for ten years.  Only five days before his execution did Ledford bring his

concern about the interaction of these two drugs.  Ledford has failed to show any equitable relief is warranted in these circumstances.

Under all the particular facts and circumstances of this case, Ledford has not shown that he has met the equitable requirements for a stay against the State.

## VII.  CONCLUSION

After review, this Court denies Ledford's motion for a stay of execution because (1) Ledford's § 1983 claims are time-barred; (2) alternatively, Ledford has not shown a substantial likelihood of success on his § 1983 claims; and (3) in any event, equitable considerations, including Ledford's delay in bringing a § 1983 complaint and the State's and the victims' interests in the finality and timely enforcement of valid criminal judgments, do not warrant the entry of a stay of Ledford's execution for this 1992 murder.[3]

**EMERGENCY MOTION FOR A STAY DENIED.**

---

[3]Plaintiff-Appellant's Petition for Initial Hearing En Banc and for a stay of execution from the en banc court remains pending.

JORDAN, Circuit Judge, concurring:

I join Parts I–III of the majority opinion and concur in the denial of a stay. Because Mr. Ledford's execution protocol claim is untimely under Eleventh Circuit precedent, I do not find it necessary to address the other grounds set forth by the majority.