[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-12257-P

_____

D.C. Docket No. 1:17-cv-00221-WS-B


THOMAS ARTHUR,

                                                          Plaintiff-Appellant,

                              versus

COMMISSIONER, ALABAMA DEPARTMENT OF CORRECTIONS,
 WARDEN,

                                                          Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

(May 25, 2017)

Before HULL, MARCUS, and WILSON, Circuit Judges.

HULL, Circuit Judge:

Under sentence of death, Thomas Arthur's execution is currently scheduled for May 25, 2017 at 6:00 p.m. CST.  This is Arthur's eighth scheduled execution[1] and seventh 42 U.S.C. § 1983 case.[2]

This seventh § 1983 case was filed on Tuesday, May 16, 2017 (nine days before his scheduled execution).  Late in the evening of Monday, May 22, 2017 (less than 36 hours before his scheduled execution), Arthur filed in this Court a motion for a stay of execution.

In this seventh § 1983 case, Arthur once again challenges Alabama's use of midazolam in his execution.  In his prior § 1983 midazolam challenge, following discovery and a bench trial, the United States District Court for the Middle District of Alabama (the "Middle District Court") and this Court concluded that Arthur's midazolam claims lacked merit.  Arthur v. Comm'r, Ala. Dep't of Corr., 840 F.3d 1268 (11th Cir. 2016), cert. denied Arthur v. Dunn, 137 S. Ct. 725 (Feb. 21, 2017), pet. for rehearing denied Arthur v. Dunn, __ S. Ct. __, No. 16-602, 2017 WL 1427632 (Apr. 24, 2017).

---

[1]Alabama previously scheduled Arthur's execution for: (1) April 27, 2001; (2) September 27, 2007; (3) December 6, 2007; (4) July 31, 2008; (5) March 29, 2012; (6) February 19, 2015; and (7) November 3, 2016.  See Arthur v. Comm'r, Ala. Dep't of Corr., 840 F.3d 1268, 1275 n.2 (11th Cir. 2016).

[2]Arthur's six prior cases include Arthur's three prior, separate § 1983 cases challenging the first drug in his execution.  The other three separate cases are § 1983 complaints: (1) raising a First Amendment access-to-courts claim; (2) seeking access to physical evidence for DNA testing; and (3) requesting an injunction barring a post-mortem autopsy of his body.

In this seventh § 1983 case (Arthur's second case challenging Alabama's use of midazolam), Arthur filed this time in the United States District Court for the Southern District of Alabama (the "Southern District Court").  On May 18, 2017, the Southern District Court denied Arthur's motion for a temporary restraining order and/or preliminary injunction and dismissed Arthur's § 1983 complaint with prejudice "on the separate and independent grounds of res judicata and the special equitable principles governing eleventh-hour method-of-execution challenges brought by death row inmates."

Arthur appealed to this Court.  This Court granted Arthur's motion for expedited briefing, to be completed by 5:00 p.m. EST on Wednesday, May 24.  After review, we affirm the district court's dismissal and deny Arthur's motion for a stay of execution.

## I.  STANDARD OF REVIEW

This Court reviews the district court's res judicata determinations de novo.  Maldonado v. U.S. Atty. Gen., 664 F.3d 1369, 1375 (11th Cir. 2011).  Arthur's § 1983 complaint sought only equitable injunctive relief.  We review the district court's dismissal of that complaint on unreasonable-delay grounds only for abuse of discretion.  Grayson v. Allen, 491 F.3d 1318, 1321 n.2 (11th Cir. 2007).

"Injunctive relief is an equitable remedy that is not available as a matter of right."  Id. at 1322.  Both the United States Supreme Court and this Court have

3

held that an inmate's lawsuit may be dismissed on equitable grounds where the inmate waited too late to file his lawsuit.  Hill v. McDonough, 547 U.S. 573, 584, 126 S. Ct. 2096, 2104 (2006); see also Hallford v. Allen, 576 F.3d 1221, 1222 (11th Cir. 2009) (per curiam) (dismissing a § 1983 action for unreasonable delay).

Additionally, "the equitable principles at issue when inmates facing imminent execution delay in raising their § 1983 . . . challenges are equally applicable to requests for both stays and injunctive relief" in complaints.  Grayson, 491 F.3d at 1322 (concluding that, where a death-row inmate unreasonably delayed in filing his § 1983 suit, affirmance of the district court's dismissal was warranted). Where a petitioner's scheduled execution is imminent, there is no practical difference between denying a stay on equitable grounds and denying injunctive relief on equitable grounds in a § 1983 lawsuit.

As to Arthur's motion for a stay, a stay of execution is appropriate only if the moving party establishes that: (1) he has a substantial likelihood of success on the merits; (2) he will suffer irreparable injury unless a stay issues; (3) the stay would not substantially harm the other litigant; and (4) if issued, the stay would not be adverse to the public interest.  Brooks v. Warden, 810 F.3d 812, 818 (11th Cir. 2016); Gissendaner v. Comm'r, Ga. Dep't of Corr., 779 F.3d 1275, 1280 (11th Cir. 2015) (quoting Wellons v. Comm'r, Ga. Dep't of Corr., 754 F.3d 1260, 1263 (11th Cir. 2014)).

4

Courts considering a request for a stay must recognize the "'strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay.'" Hill, 547 U.S. at 584, 126 S. Ct. at 2104 (quoting Nelson v. Campbell, 541 U.S. 637, 650, 124 S. Ct. 2117, 2126 (2004) (requiring district courts to consider whether an inmate unnecessarily delayed in bringing the claim before granting a stay "[g]iven the State's significant interest in enforcing its criminal judgments")).

## II.  ARTHUR'S LITIGATION HISTORY

To place this seventh § 1983 case in context, we briefly review just some of Arthur's 25-year litigation history from 1992 to 2017. See Arthur v. Thomas, 739 F.3d 611, 614-25 (11th Cir. 2014).

After his third trial in 1991, Arthur was convicted of the murder of Troy Wicker and sentenced to death in 1992. Id. Arthur was on work release during a life sentence for a prior murder conviction when he killed Troy Wicker by shooting him in the right eye. Ex parte Arthur, 711 So. 2d 1097, 1098 (Ala. 1997). After direct review and multiple state collateral review cases, the state courts denied Arthur relief. Arthur, 739 F.3d at 620-21. In 2002, the United States Supreme Court denied Arthur's petition for a writ of certiorari as to his murder conviction and death sentence. Id. at 621.

5

In 2001, Arthur filed a federal 28 U.S.C. § 2254 petition in the district court, and Arthur did not prevail.  Id. at 621-23.  In 2006, this Court affirmed.  Id. at 623-24.  For a second time, the United States Supreme Court denied Arthur's petition for a writ of certiorari.  Id. at 624-25.

## A.    2007-2016:  Arthur's Three Prior § 1983 Method-of-Execution Cases

In May 2007, Arthur filed his first § 1983 challenge to the method of his execution, which at that time included sodium thiopental as the first drug in a three-drug series.  (CM/ECF for the U.S. Dist. Ct. for the S.D. Ala., case no. 1:07-cv-342, docs. 1, 15).  Arthur did not prevail.  Arthur v. Allen, No. 07-0342, 2007 WL 2320069 (S.D. Ala. Aug. 10, 2007), aff'd 248 F. App'x 128 (11th Cir. Sept. 17, 2007) (unpublished).  The United States Supreme Court denied Arthur's petition for a writ of certiorari.  Arthur v. Allen, 553 U.S. 1004, 128 S. Ct. 2048 (2008).

In October 2007, Arthur filed a second challenge to Alabama's lethal injection protocol, and Arthur did not prevail.  Arthur v. Ala. Dep't of Corr., 285 F. App'x 705 (11th Cir. 2008) (unpublished).  This Court affirmed.  Id.

Arthur's third § 1983 method-of-execution litigation lasted for over five years.  In April 2011, Alabama switched the first drug from sodium thiopental to pentobarbital.  See Arthur, 840 F.3d at 1275.  Two months later, Arthur filed a new

§ 1983 complaint in the Middle District Court against the Alabama Department of

Corrections ("ADOC") challenging this pentobarbital-based protocol.  Id.

In September 2014, Alabama switched to midazolam. [3]  Id. at 1276.  Arthur

twice amended his § 1983 complaint to challenge midazolam and Alabama's

execution protocol involving midazolam.  Id. at 1275-78.  After holding a bench

trial in January 2016 regarding midazolam, the "pinch test," medical monitoring,

and many other § 1983 claims about Alabama's execution procedures, the district

court issued two dispositive orders.  Id. at 1278, 1283, 1296.  In its first order, the

district court determined that ADOC was entitled to judgment on Arthur's facial

challenge to midazolam and on his Equal Protection claims.  Id. at 1283-86.  In its

second order, the district court denied relief on Arthur's many as-applied

challenges to ADOC's use of midazolam as applied to Arthur personally.  Id. at

1296-98.  As a result, in July 2016, the district court entered final judgment on

Arthur's § 1983 challenges to midazolam under the Eighth Amendment.  Id. at

1298.

## B.    Arthur's Appeal in His Third § 1983 Method-of-Execution Case

On November 2, 2016, this Court affirmed the district court's final judgment

in Arthur's fifth § 1983 case, rejecting his challenge to Alabama's use of

---

[3]Alabama has used a three-drug lethal injection protocol since it began performing executions by lethal injection in 2002.  See Arthur, 840 F.3d at 1274.  The third drug has always been potassium chloride, and the second drug has always been a paralytic agent—either pancuronium bromide or rocuronium bromide.  Id.  From April 2011 until September 10, 2014, it used pentobarbital as the first drug, and in September 2014, it switched to midazolam.  Id.

midazolam. Id. at 1303-04, 1315-17. After exhaustively reviewing the evidence submitted by both Arthur and ADOC in that § 1983 case, this Court determined that the district court had not erred in finding that Arthur had not met his burden of showing that ADOC's midazolam-based lethal injection protocol facially violated the Eighth Amendment. Id. at 1303-04. This Court also rejected Arthur's as-applied Eighth Amendment challenge to midazolam for several, alternative reasons, as outlined in our 140-page decision. Id. at 1305-12. Arthur had not met his burden of demonstrating that Alabama's use of midazolam, as applied to him, was "sure or very likely to cause serious illness and needless suffering, and give rise to sufficiently imminent dangers"—the showing demanded by the United States Supreme Court. Id. at 1312 (quoting Glossip v. Gross, 576 U.S. __, __, 135 S. Ct. 2726, 2737 (2015)).

On February 21, 2017, the United States Supreme Court denied Arthur's petition for a writ of certiorari in that five-year § 1983 litigation. Arthur, 137 S. Ct. at 725. On April 24, 2017, the United States Supreme Court denied Arthur's petition for rehearing. Arthur, 2017 WL 1427632, at *1.

### III. ARTHUR'S CURRENT § 1983 SUIT

This brings us to Arthur's new and seventh § 1983 case, filed on May 16, 2017 (nine days before his scheduled execution). Arthur did not return to the Middle District Court where Arthur had not prevailed in his prior § 1983 Eighth

Amendment challenge to Alabama's use of midazolam. This time, Arthur filed a § 1983 complaint challenging Alabama's use of midazolam in the Southern District Court.

The Southern District Court denied Arthur's motion for an injunction and dismissed Arthur's seventh § 1983 complaint for two independent reasons: (1) res judicata and (2) equitable principles, including unreasonable delay.

First, as an essential element of its res judicata analysis, the Southern District Court determined that the parties are the same and that Arthur was pursuing the same cause of action in both the instant midazolam case in the Southern District Court and in his prior midazolam case in the Middle District Court. Arthur's complaint pointed to four supposedly "botched" recent executions: Ronald Bert Smith in Alabama, Jack Jones and Kenneth Williams in Arkansas, and Ricky Gray in Virginia. As a result of these executions, Arthur alleged that Alabama is now intentionally inflicting pain on him. The Southern District Court emphasized that only one of those four executions occurred in Alabama, and that was the execution of Ronald Bert Smith back on December 8, 2016, over five months before.

The Southern District Court noted that, in Arthur's Third Amended Complaint in the Middle District Court challenging the use of midazolam, Arthur had already alleged  there were other "botched" executions, but Arthur had never

9

successfully demonstrated that or that midazolam violated the Eighth Amendment as applied to him.  Because Arthur's current allegations were similar in "substance and tenor" to those earlier, rejected allegations, the Southern District Court determined that Arthur's instant complaint "simply [offers] more of the same." Accordingly, the Southern District Court determined that "the factual predicate of the two actions is factually indistinguishable, such that Arthur could have raised his 'intent'-based Eighth Amendment theory in the prior action."

Second, the Southern District Court looked to the specialized equitable principles at play in eleventh-hour challenges brought by death-row inmates and determined that, given the circumstances here, Arthur was not entitled to the equitable relief of an injunction sought in his seventh § 1983 complaint.[4]

---

[4]The Southern District Court explicitly declined to reach the merits of Arthur's Eighth Amendment claim, although it opined that, were it to do so, it would conclude that Arthur's claims were meritless.

It noted that Arthur's proffered theory "appears to fly in the face of the Glossip/Baze line of authorities," which requires death-row inmates challenging the method of their execution to show a readily available alternative method.  The Southern District Court characterized Arthur's complaint as an attempt to "sidestep his lack of evidence of a readily available alternative method of carrying out his execution."  And Arthur's claim would fail on the merits because he did not identify any facts or law that  might "plausibly allow him to circumvent" the standard for Eighth Amendment claims, as enunciated by the United States Supreme Court in Glossip and Baze v. Rees, 553 U.S. 35, 128 S. Ct. 1520 (2008).

The Southern District Court also noted that Arthur's putative Fourteenth Amendment Equal Protection claim seemed like an "afterthought," was due to de dismissed on res judicata and equitable grounds, and, further, "would be properly dismissed on the merits for want of any plausible factual allegation in the Complaint that the State will treat Arthur disparately from other similarly situated persons."

10

## IV.  RES JUDICATA

The doctrine of res judicata has four elements: (1) the prior decision must have been rendered by a court of competent jurisdiction; (2) there must have been a final judgment on the merits; (3) both cases must involve the same parties; and (4) both cases must involve the same "causes of action."  Mann v. Palmer, 713 F.3d 1306, 1311 (11th Cir. 2013) (quoting In re Piper Aircraft Corp., 244 F.3d 1289, 1296 (11th Cir. 2001)).  If a claim raised in the new suit "was or could have been raised in the prior action . . . res judicata applies."  Id. (quoting same).

Undisputedly, the first three prongs are satisfied because: (1) the prior decision was by the Middle District Court; (2) there was a final judgment on the merits; and (3) the parties are the same.  As the Southern District Court correctly determined, only the fourth prong of the analysis is at issue in this case.  "In determining whether the causes of action are the same, a court must compare the substance of the actions, not their form.  It is now said, in general, that if a case arises out of the same nucleus of operative fact, or is based upon the same factual predicate, as a former action, that the two cases are really the same 'claim' or 'cause of action' for purposes of res judicata."  Id. (quoting Piper, 244 F.3d at 1297).

Arthur's claims raised in his seventh § 1983 case are barred by res judicata.  To the extent that Arthur challenges ADOC's use of midazolam generally or as

applied to him, that claim was extensively litigated for years in both in the Middle District Court and this Court.  Arthur has come forward with no basis, much less any allegations, to upend that determination.  Indeed, in this seventh § 1983 case, Arthur recycles many of his allegations about the inefficacy of midazolam from his prior § 1983 complaint in the Middle District Court.  For example, in both complaints, Arthur alleged that: (1) midazolam is a sedative that is primarily used to treat anxiety and is "not approved for use as a stand-alone anesthetic"; (2) midazolam is subject to a "ceiling effect"; and (3) Alabama's protocol creates an intolerable risk that the inmate will not be sufficiently anesthetized, leading to him feeling the "excruciating pain" of the later drugs.

The only arguable addition is that Arthur now points to four recent executions to raise what Arthur terms an "actual knowledge" or "intentional infliction" claim.  Although Arthur brings this case under the Eighth Amendment, Arthur argues this case is a wholly "new cause of action" because ADOC now actually knows that midazolam will cause Arthur agonizing pain and because this "intentional" infliction of a painful death runs afoul of the Eighth Amendment. "Intentional infliction" of cruel punishment is the crux of Arthur's current § 1983 case, but of course it still remains a claim alleging cruel and unusual punishment under the Eighth Amendment.

12

The fatal flaw in Arthur's argument is that his "intentional infliction" theory could have been raised in his prior, five-year-long § 1983 litigation. See Maldonado, 664 F.3d at 1377 ("A new claim is barred by res judicata if it is based on a legal theory that was or could have been used in the prior action."). Indeed, in his lengthy midazolam case in the Middle District Court, two of Arthur's amended complaints expressly raised allegations of "other botched executions" that ADOC knew or should have known about.

For example, in his Second Amended Complaint, filed in January 2015 to challenge ADOC's use of midazolam, Arthur devoted an entire section of his complaint to "four recent executions [that] confirm the serious risks posed by the use of midazolam." In support, Arthur pointed to: (1) Florida's October 15, 2013 execution of William Happ, who allegedly "made an unusual number of body movements"; (2) Ohio's January 16, 2014 execution of Dennis McGuire, who struggled "for about 10 minutes"; (3) Oklahoma's April 29, 2014 execution of Clayton Lockett, where placing the IV line was problematic; and (4) Arizona's July 23, 2014 execution of Joseph Wood.

Arthur repeated these allegations in his Third Amended Complaint (the final operative complaint in his prior midazolam litigation), which was filed in October 2015.

13

As the Southern District Court correctly pointed out, Arthur's allegations about the four most recent executions (of Smith, Gray, Jones, and Williams in 2016 and 2017) are simply more of the same type of allegations Arthur made in his prior midazolam challenge in the Middle District Court.  The allegedly botched executions of Happ, McGuire, Lockett, and Wood in 2013 and 2014 could just have easily laid the foundation for Arthur's "actual knowledge" theory as the 2016 and 2017 executions of Smith, Gray, Jones, and Williams.  And yet Arthur did not raise this claim or theory in the earlier § 1983 midazolam litigation, which lasted for years.[5]

Under Arthur's theory, res judicata could never apply to an inmate's method-of-execution challenge so long as the inmate continued to raise new allegations of recently botched executions.  This cannot be so.  Because Arthur's new claim about midazolam arises from essentially the same nucleus of operative facts as his prior claim about midazolam, the fourth and final prong of res judicata is met.

Despite referencing executions in other states both in his prior midazolam case and his current midazolam case, Arthur's argument on appeal is now that it is

---

[5]Additionally, in his First Amended Complaint, filed in July 2011 to challenge ADOC's use of pentobarbital as the first drug, Arthur noted the executions of Alabama inmate Eddie Powell and Georgia inmate Roy Willard Blankenship, both of whom Arthur argued had "gasped for air and jerked their heads after this drug was administered."  Arthur's First Amended Complaint pointed to the purported irregularities in these two executions to demonstrate that "pentobarbital did not adequately anesthetize" the inmates.

only the Smith execution in Alabama on December 8, 2016 that gives rise to his

current claim because it was only this execution that gave ADOC firsthand

knowledge that midazolam  is insufficient to adequately anesthetize the inmate.

This argument ignores that on November 2, 2016, Arthur filed another

§ 1983 case (the telephone case) and alleged (1) that Alabama executed inmate

Christopher Brooks in January 2016 using midazolam, (2) that Brooks opened his

left eye after the midazolam was injected, and (3) that Brooks was insufficiently

anesthetized by midazolam. [6]  But when we credit Arthur's argument that it is only

ADOC's firsthand actual knowledge that could give rise to his "intentional

infliction" theory, he could have brought this claim shortly after Brooks's January

2016 execution, and even while his prior § 1983 claim was still pending before the

Middle District Court.  He did not do so, and thus res judicata still applies.  See

---

[6]Additionally, media reports about Brooks's execution directly contradict Arthur's allegations.  See Kent Faulk, Alabama Death Row inmate Christopher Brooks' last minutes, Al.com (Jan. 23, 2016).  According to those reports, Brooks's execution lasted about 27 minutes. Id.  At approximately 6:11 p.m., the administration of 500 milligrams of midazolam began.  Id. "At 6:14 p.m. the chaplain stood up and backed away.  Brooks was still and his mouth slightly open, but his chest continued to move up and down."  Id.  "At 6:17 p.m. the corrections officer . . . approached to perform a consciousness test.  The officer called out Brooks' name twice, pulled Brooks' left eyelid back, and pinched the backside of Brooks' left arm, all to make sure he was sedated."  Id.  "By 6:20 Brooks' breathing had become undetectable . . . .  He never appeared to struggle or move."  Id.  "Prison officials said doctors declared Brooks dead at 6:38 p.m."  Id.

In contrast, Arthur has offered (in the telephone case) only a conclusory allegation that one of Brooks's eyes was open and that this indicated Brooks was not adequately anesthetized. This factual dispute does not matter for the purposes of our decision here because it is apparent from Arthur's allegations (in the telephone case) that he believed Brooks's movements showed the inefficacy of midazolam during that execution, which (under Arthur's theory) should have given ADOC actual knowledge of the potential problems with its midazolam protocol.

Mann, 713 F.3d at 1311 (explaining that res judicata bars a claim raised in a new suit that "could have been raised in the prior action").

## V.  ARTHUR UNREASONABLY DELAYED IN BRINGING HIS CLAIM

Even if res judicata does not apply, Arthur's § 1983 complaint seeks only injunctive relief.  Alternatively, and as an independent ground, we conclude that the district court did not abuse its discretion or commit error in concluding that Arthur unreasonably delayed in bringing both his Eighth and Fourteenth Amendment claims only nine days before his execution but sixteen months after Brooks's execution in Alabama and five months after Smith's execution in Alabama.

In a § 1983 suit by a death-row inmate in Hill v. McDonough, the United States Supreme Court acknowledged that "a number of federal courts have invoked their equitable powers to dismiss suits they saw as speculative or filed too late in the day."  547 U.S. at 584, 126 S. Ct. at 2104 (collecting cases).  Although it did not address the correctness of those determinations, the United States Supreme Court nevertheless recognized the "significant" problems created when death-row inmates delay in filing their § 1983 suits, stating that "federal courts can and should protect States from dilatory or speculative suits."  Id. at 585, 126 S. Ct. at 2104.

16

Additionally, "the equitable principles at issue when inmates facing imminent execution delay in raising their § 1983 . . . challenges are equally applicable to requests for both stays and injunctive relief."  Grayson, 491 F.3d at 1322.  Under these principles, this Court has previously concluded that, where a death-row inmate unreasonably delayed in filing his § 1983 suit, affirmance of the district court's dismissal was warranted.  Id. at 1325; see also Arthur v. King, 500 F.3d 1335, 1341 (11th Cir. 2007).

Under all the facts and circumstances here, Arthur has not shown that he has met the equitable requirements for injunctive relief.  Arthur's direct and post-conviction appeals concluded almost 15 years ago.  His third and most lengthy § 1983 method-of-execution case, which challenged Alabama's lethal injection protocols, lasted five-and-a-half years, consisted of multiple claims, involved discovery, and culminated in a two-day bench trial before the federal district court judge in the Middle District Court.  See Arthur, 840 F.3d at 1272.  The allegedly "botched" midazolam executions alleged in Arthur's Second and Third Amended Complaints took place in 2013 and 2014, while his prior midazolam case was being litigated and years before he brought the instant § 1983 case.  And yet Arthur waited to raise this "intentional infliction" claim until nine days before his scheduled May 25, 2017 execution.

17

This lawsuit also came two-and-a-half years after ADOC adopted its midazolam protocol. What's more, on November 2, 2016, Arthur alleged in his sixth § 1983 case (the telephone case) that Brooks made irregular movements during his January 2016 execution, which, according to Arthur, showed that Brooks was insufficiently anesthetized. Yet Arthur nevertheless waited sixteen months after Brooks's execution to bring the instant § 1983 case.

Arthur's delay in asserting his rights undermines his argument because "if he truly had intended to challenge Alabama's lethal injection protocol, he would not have deliberately waited to file suit until a decision on the merits would be impossible without entry of a stay or an expedited litigation schedule." Brooks, 810 F.3d at 825 (quoting Grayson, 491 F.3d at 1326). In short, Arthur has provided no reliable explanation for this delay, leaving us with "little doubt that the real purpose behind his claim is to seek a delay of his execution, not merely to effect an alteration of the manner in which it is carried out." Jones v. Allen, 485 F.3d 635, 640 (11th Cir. 2007). Thus, we conclude that the district court did not abuse its discretion in dismissing Arthur's Eighth and Fourteenth Amendment claims on equitable grounds.

## VI.    EQUITABLE RELIEF

We also deny Arthur's motion for a stay because a stay of execution is an equitable remedy, and Arthur has not met his burden to demonstrate entitlement to that equitable relief.

A stay is an equitable remedy that is not available as a matter of right, and before granting a stay, this Court must consider "the relative harms to the parties," "the likelihood of success on the merits," and "the extent to which the inmate has delayed unnecessarily in bringing the claim." Nelson, 541 U.S. at 649-50, 124 S. Ct. at 2126.  We consider the relative harms to the parties by balancing the competing interests of Arthur and Alabama.  Crowe v. Donald, 528 F.3d 1290, 1292 (11th Cir. 2008).  "A defendant's interest in being free from cruel and unusual punishment is primary; however, the State's interest in effectuating its judgment remains significant." McNair, 515 F.3d at 1172.  Victims of crime also "have an important interest in the timely enforcement of a sentence." Hill, 547 U.S. at 584, 126 S. Ct. at 2104.

There is a strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring a stay.  Jones, 485 F.3d at 638.  In several decisions, this Court has refused to grant a dilatory stay sought on the eve of execution.  See, e.g., Crowe, 528 F.3d at 1294; Diaz v. McDonough, 472 F.3d 849, 851 (11th Cir.

19

2006); Hill v. McDonough, 464 F.3d 1256, 1259-60 (11th Cir. 2006).  Most recently, this Court refused to grant a stay of execution to a Georgia inmate who waited until five days before his execution to file his lawsuit.  Ledford v. Comm'r, Ga. Dep't of Corr., ___ F.3d __, No. 17-12167, 2017 WL 2104682, at *6-7 (11th Cir. May 15, 2017).  We see no distinguishable difference between Arthur's case and our decision in Ledford.

In any event, as outlined above, Arthur's claims are barred by res judicata and equitable principles relating to unreasonable delay.  Thus, Arthur has not shown a substantial likelihood of success on the merits to warrant a stay.

Finally, in seeking a stay of his May 25, 2017 execution, Arthur's instant complaint (filed May 16, 2017) and brief (filed May 19, 2017) cite internet news accounts and snippets from those and other sources about, inter alia, the four recent midazolam executions (of Smith, Gray, Jones, and Williams).[7]  Arthur cherry picks

_____

[7]For example, Arthur cites to these various internet news articles to support his allegations about the facts of these other executions and other states' execution protocols.  See Alan Blinder, Arkansas Governor Rebuffs Calls for Execution Inquiry, The New York Times (Apr. 28, 2017), https://www.nytimes.com/2017/04/28/us/arkansas-execution-midazolam-lethal-injection.html?_r=2 (discussing Williams); Kim Chandler, Alabama inmate coughs, heaves 13 minutes into execution, AP (Dec. 9, 2016), https://apnews.com/4c0bd6e7c9a34448aa0af8d30e58e1d5/alabama-scheduled-execute-man-clerks-1994-killing (discussing Smith); Kristen Whitney Daniels, Ricky Gray becomes 112th person executed in Virginia, National Catholic Reporter (Jan. 24, 2017), https://www.ncronline.org/blogs/ncr-today/ricky-gray-becomes-112th-person-executed-virginia (discussing Gray); Manny Fernandez, Arizona Agrees to Stop Using Drug Tied to Botched Executions, The New York Times (Dec. 20, 2016), https://www.nytimes.com/2016/12/20/us/arizona-lethal-injection-midazolam.html?_r=0 (discussing Arizona's decision to stop using midazolam); Kent Faulk, Alabama Death Row inmate: legislators, not the prison system, should decide execution drugs, AL.com (Mar. 16,

20

an alleged detail or two from certain news accounts.  In response, the State argues

that the internet news reports, if anything, show midazolam worked as intended

and Arthur has not demonstrated a substantial likelihood of success on his Eighth

Amendment claim, which is required for a stay.

For example, according to news accounts, Gray's execution in Virginia

lasted only fourteen minutes after the first drug (midazolam) was injected.  Frank

Green and Ali Rockett, Executed: Ricky Gray put to death for murders of Harvey

girls, Richmond Times-Dispatch (Jan. 18, 2017),

http://www.richmond.com/news/local/crime/executed-ricky-gray-put-to-death-for-

murders-of-harvey/article_5de1f312-1142-5cad-88a3-cde1a0e068c7.html.  One

minute into the execution, Gray did little more than take a few deep breaths and

make snoring or groaning sounds, and five minutes into the execution, Gray's body

movements appeared to have stopped.  Id.

According to news accounts, Jones's execution in Arkansas also lasted only

fourteen minutes.  Andrew DeMillo, Contrasting accounts of Arkansas execution

from witnesses, AP (Apr. 25, 2017),

https://www.apnews.com/8293f4e52c9d40529d4a951238c7f886.  While some

witnesses saw Jones moving his lips after completing his final words, the state

---

2017), www.al.com/news/birmingham/index.ssf/2017/03/alabama_death_row_inmate_legis.html
(discussing other state's protocols as well as Arthur's latest round of appeals).

prison spokesman indicated that this was because Jones was still speaking to the director of the corrections department. Id. The other witnesses disputed whether Jones gasped or gulped for air about five minutes into the execution, but this was the only other movement reported during the first five minutes. Id. The execution took a total of fourteen minutes, and there is so far no report of movement in the last nine minutes. Id.

According to news accounts, Williams's execution in Arkansas similarly lasted only thirteen minutes. Timeline of latest Arkansas execution from AP reporter, AP Apr. 28, 2017, https://www.apnews.com/88dbdd478f504dfb92106478ab1b9e3c. While some witnesses reported Williams lurching only three minutes into the execution, this movement was only alleged to have lasted no more than twenty seconds. Id. Arthur also does not mention that Arkansas executed four men last month, including Jones and Williams, and all four executions lasted less than twenty minutes. Arkansas inmate Kenneth Williams lurches, convulses during execution, Al.com (Apr. 28, 2017), http://www.al.com/news/index.ssf/2017/04/arkansas_inmate_kenneth_willia.html.

This is not to say that we rely on news reports. Rather, it is only to point out why Arthur's reliance on internet news reports does not help his case.

22

Finally, as to the Smith execution, Arthur does cite something more than news reports. Arthur filed the declaration of Spencer Hahn, an attorney and a witness to Smith's execution, describing irregular movements by Smith. Notably, Hahn does not state how long those movements lasted or exactly when the first drug was started or completed. Of course, this is because witnesses do not know when the administration of the first drug begins or ends and thus do not know whether the movements occurred before or after the completion of the first sedative drug.

As to Smith, the State asserts (both in this case and Arthur's telephone case) that the descriptions from the Hahn affidavit are wrong and that, even if the descriptions are arguably accurate, "the fact that Smith struggled for breath, heaved, coughed, and clenched his fist, without more, falls far short of showing that midazolam 'is sure or very likely to cause serious illness and needless suffering.'" Gray v. McAuliffe, No. 3:16CV982-HEH, 2017 WL 102970, at *12 (E.D. Va. Jan. 10, 2017) (citing Glossip v. Gross, 135 S. Ct. 2726, 2737 (2015)).

News reports, however, attempt to estimate the time. According to one report, Smith's execution lasted only 34 minutes, during which Smith heaved and coughed for about 13 minutes [10:34 to 10:47 p.m.] and underwent two consciousness tests to make sure he couldn't feel pain. Kent Faulk, Alabama Death Row inmate Ronald Bert Smith heaved, coughed for 13 minutes during

23

execution,  Al.com (Dec. 8, 2016),

http://www.al.com/news/birmingham/index.ssf/2016/12/alabama_death_row_inma te_is_se.html#incart_std.  Before the second consciousness test, the heaving and coughing had apparently stopped.  Id.  That media report also indicates that Alabama Prison Commissioner Jeff Dunn stated that he did not "see any reaction to the consciousness assessment."  Id.  The only point is that Hahn's declaration says nothing about how long Smith's movements lasted and which drugs were administered at what time.  Thus, even with the Hahn declaration, Arthur has not shown a substantial likelihood of success on his Eighth Amendment challenge to midazolam as applied to him.

## VII.  CONCLUSION

For all of the above reasons, this Court affirms the district court's dismissal and, in any event, denies Arthur's motion for a stay of execution.[8]

**AFFIRMED AND MOTION FOR A STAY DENIED.**

---

[8]This Court also determines (for all the reasons given in this decision) that Arthur has not shown a substantial likelihood of success on the merits of his purported Fourteenth Amendment Equal Protection Claim and, thus, we deny a stay of execution as to that claim too.

24

WILSON, Circuit Judge, concurring:

I concur in the result only.  Although I do not agree with all of the Majority's analysis and believe that some of the analysis is unnecessary, the Majority in my view ultimately reaches the correct result.